## 41295. EDGEHILL v. THE STATE.
### (320 SE2d 176)

MARSHALL, Presiding Justice.

The appellant, Peter Edgehill, was convicted of the murders of Gilbert Ray Beckham and Josephine Hall. He was sentenced to two consecutive terms of life imprisonment. He appeals. These are the facts:

In May of 1982, the victims' corpses were found in two trunks. The trunks appear to have been intentionally hidden from view. Each trunk contained the skeletonized remains of a body and floral-patterned bed linens. Medical testimony established that both victims had been dead for approximately one year prior to their discovery, and they both died from bullet wounds to the chest. The bodies were identified on the basis of clothing and jewelry found thereon, as well as through the victims' dental records. Evidence was introduced that the bed linens matched those which had been seen at the appellant's residence.

The trunks in which the victims' corpses were found were located in a building at 840 Gordon Street in Atlanta. The appellant purchased this building in 1980. At that time, the appellant lived with his girl friend, Peggy Morris, in a duplex residence at 1115 Oglethorpe Avenue in Atlanta. Gilbert Beckham and the appellant had been friends, but they were involved in an altercation before Beckham was murdered, and they were known to argue violently. Beckham was known to be a drug dealer, and he made frequent trips from the New York area to Atlanta. In addition, he was known to carry large amounts of cash in a dark brown pouch. He drove a 1981 silver Corvette with New Jersey license plates.

There was testimony from witnesses that Beckham and Ms. Hall left the New York area in the spring of 1981, and they were last seen in North Carolina. At that time, Beckham had the brown bag in his possession, and it appeared to be filled. The appellant testified that he was visited in Atlanta by Beckham in April of 1981.

The appellant became in arrears in his mortgage payments on the

Oglethorpe Avenue and Gordon Street properties. During the summer of 1981, he borrowed $10,000 from Beckham. However, the Gordon Street and Oglethorpe Avenue properties were foreclosed in late 1981. A bloody mattress was observed among appellant's belongings. In addition, there was testimony that the appellant possessed a .22 calibre magnum handgun and a .38 calibre handgun.

Tom Morris, Jr., a former employee of the appellant's, testified that the appellant engaged him to drive a vehicle to the Oglethorpe residence in the spring of 1981. Morris testified that the vehicle had New Jersey plates. The appellant then told Morris to get the keys to the Gordon Street residence because "there was something in the building. I didn't want you to get involved." Morris observed the money pouch in the vehicle, and the pouch appeared to be "filled up"; Morris was paid $100 by the appellant. Morris subsequently observed the back portion of the Gordon Street building boarded up, whereas it had not been before. Within 24 hours after the foregoing events with Morris occurred, the appellant had left Atlanta.

Beckham's Corvette was traced to a parking lot in Atlantic City, New Jersey. The brown bag was gone.

Peggy Morris, the appellant's girl friend, testified that the appellant had threatened to kill the victims and indicated after the victims were killed that he had killed them.

The appellant testified that he was at a family reunion in Pennsylvania during Memorial Day weekend of 1981.

1. First, the appellant argues in this appeal that the evidence is insufficient to prove the identity of the victims specifically and his guilt of the offenses generally. We disagree.

There was lay testimony that jewelry and clothes found on the victims in the trunks were articles belonging to them which they had worn in the past. In addition, an expert in forensic medicine was allowed to identify the victims based on their dental records. Other, albeit circumstantial, evidence tied the appellant to the murders.

The foregoing evidence was sufficient under Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to establish the identity of the victims and the appellant's guilt of the offenses charged. See Washington v. State, 243 Ga. 329 (253 SE2d 719) (1979).

Although it would appear that the dental records constituted valid and admissible evidence (see Redd v. State, 240 Ga. 753 (6) (243 SE2d 16) (1978); see also Smith v. State, 247 Ga. 612 (277 SE2d 678) (1981)), no objection to its introduction was made. See Redd v. State, 240 Ga., supra, at 755, 756.

2. Third, the appellant argues that his motion for mistrial should have been granted when, on cross-examination of him, the prosecuting attorney questioned him concerning his involvement in federal drug charges previously pending against him and Beckham.

We hold that the appellant cannot complain of this questioning, because he testified to these very incidents on direct examination, thereby opening the door to this line of cross-examination. See generally *Kessel v. State*, 236 Ga. 373 (3) (223 SE2d 811) (1976). In any event, the appellant testified that the charges were dismissed. Therefore, any error in admittance of this evidence was not prejudicial.

Also, it should be noted that evidence of other independent crimes is admissible where its introduction shows, among other things, motive. E.g., *State v. Johnson*, 246 Ga. 654 (272 SE2d 321) (1980). Here, evidence that the appellant and Beckham had been involved in a drug deal could be said to have shown a motive for the killing.

3. Fourth, the appellant argues that the trial court should have granted his motion for continuance or mistrial, when the prosecuting attorney stated to the jury in closing argument that the date alleged in the indictment as being the date on which the crimes occurred did not have to be "proved with precision." The appellant argues that this rendered his alibi defense worthless and denied him due process of law.

The indictment here stated that the murders were committed on May 31, 1981, although the medical testimony was that the death of the victims occurred approximately one year "give or take a few months" before May 25, 1982, which was the date the bodies were discovered.

The general rule is that when the exact date of the commission of the crime is not a material allegation of the indictment, the commission of the offense may be proved to have occurred any time within the statute of limitations. *Carmichael v. State*, 228 Ga. 834 (2) (188 SE2d 495) (1972). There is an exception to this rule where the variance between the allegata and probata surprises and prejudices the defendant by effectively barring an alibi defense he intends to assert. *Caldwell v. State*, 139 Ga. App. 279 (2) (228 SE2d 219) (1976). Under the latter circumstances, the trial court should grant the defendant a continuance in order to afford him sufficient time to prepare his defense to meet a new date. Id. at 287.

Under the evidence in this case, we cannot say that the prosecuting attorney's statement in closing argument "surprised" the appellant, or that the exact date on which the offenses occurred was a material allegation of the indictment.

4. For the reasons given in Division 3, supra, the trial court did not err in charging the jury that the date alleged in the indictment was not material.[1]

---

[1] The appellant was convicted on April 1, 1983. His motion for new trial was denied on

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 26, 1984.

*Glenn Zell,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, John M. Turner, Jr., Assistant District Attorneys, Michael J. Bowers, Attorney General, J. Michael Davis,* for appellee.

June 1, 1984. His notice of appeal was filed on June 18, 1984. The transcript of evidence was docketed in this court on July 2, 1984. The case was submitted for decision on August 18, 1984.