A92A2148. MOZIER v. THE STATE.
(427 SE2d 551)

McMURRAY, Presiding Judge.

Defendant was convicted of rape (two counts), aggravated sodomy (two counts), armed robbery and false imprisonment. The trial court denied defendant's motion for a new trial and he appeals. *Held*:

1. Defendant argues that the trial court erroneously permitted the State to introduce evidence of similar crimes. We disagree.

The crimes in question occurred on June 27, 1990. The evidence demonstrated that the victim, a young woman, left work around midnight and started driving home. When she came to a stop sign, she was bumped by a car which had been following her. The victim did not stop; but the car sped up, pulled in front of her and blocked the road. Defendant emerged from the car, approached the victim, and pulled her out of her automobile. The victim screamed for help and defendant punched her in the face. He told the victim that he had a knife and he would kill her if she did not cooperate. Then, he pulled the victim by the hair and pushed her into his car. Defendant drove off, calling the victim vile names. He obtained the victim's driver's

license, spoke to her by name and asked her about her children. Ultimately, defendant drove the victim to a vacant apartment; he forced her to crawl into it through a broken window. Inside, defendant ordered the victim to remove her clothes; he removed the victim's jewelry; he put duct tape over the victim's eyes and taped her hands behind her back. Defendant told the victim to act like this was the last time she would ever "f___" again. Then, he raped her, sodomized her orally, raped her again, and sodomized her anally. After the victim pleaded for her life, defendant made her climb into a bathtub; he put a gag in her mouth and tied her up with clothing. Then, defendant left. After about 30 minutes, the victim was able to free herself and run for help.

The State introduced evidence of two similar crimes committed by defendant. One crime occurred in 1982; the other occurred less than one month before defendant committed the crimes in this case. The victims in the earlier crimes were young women, too. They, too, were kidnapped by defendant at knifepoint and driven to other, desolate locations (in one case, an abandoned residence) where they were raped (and, in one case, sodomized). They, too, were abducted from, or as they approached, their cars. (In one case, the modus operandi was identical to the case sub judice. Defendant bumped the victim and when she got out of her car to inspect the damage, defendant assaulted her.) They, too, were asked about their children. They, too, were bound and gagged (albeit, in one case, only temporarily).

The State demonstrated that defendant was the perpetrator of the prior crimes. The prior crimes were remarkably similar to the crimes in this case: They shed light on defendant's identity, motive, plan, scheme, bent of mind and course of conduct. The relevance of the evidence outweighed any prejudice that may have resulted from admitting it. We find no error. *Childs v. State*, 202 Ga. App. 488 (1) (414 SE2d 714).

(a) Defendant asserts the trial court erred in refusing to suppress evidence seized by the police pursuant to a warrant because the warrant was based on "false statements" in the affidavit. In this regard, defendant points to a portion of the affidavit in which the affiant-officer deposed that an investigator of the 1982 crime said that that victim was "kidnapped, raped, tied up, and left in a bathtub the same as" the victim in this case. He also points to a part of the affidavit in which the affiant-officer deposed that a witness "observed" the victim's abduction in a car.

Defendant's assertion "extends beyond the boundaries of defendant's motion to suppress. . . . OCGA § 17-5-30 (b) requires that a motion to suppress evidence 'state facts showing that the search and seizure were unlawful.' Unless defendant has satisfied this requirement the State is under no duty to present evidence in rebuttal.

*Smith v. Hopper,* 240 Ga. 93, 95 (3) (239 SE2d 510)." *Wilson v. State,* 197 Ga. App. 181, 183 (397 SE2d 744). It follows that we need not consider defendant's "false statements" assertion. But even if defendant's "false statements" assertion had been raised below, we would find it to be without merit.

Concerning the "bathtub" statement, defendant contends the victim of the 1982 crime was not left in a bathtub but was simply left in an abandoned residence. Concerning the "observed" statement, defendant contends that although the witness heard a woman scream, saw an automobile pull away, and saw another automobile abandoned, he did not "observe," i.e., actually "see," anyone put the victim in a car.

Because the "false statements" issue was not raised below, we do not know the source of the affiant-officer's "misstatements." Was the misstatement about the bathtub a result of a miscommunication between the 1982 investigator and the affiant-officer? Or was it the result of a failure of memory on the part of the 1982 investigator? Was the misstatement about what the witness "observed" a deliberate exaggeration or a matter of semantics? We do not know.

What we do know is that leaving the "misstatements" aside, the affidavit was more than sufficient to establish probable cause. " 'The fact there is an immaterial factual inaccuracy is not fatal to an otherwise adequate showing of probable cause.' *Geiger v. State,* 129 Ga. App. 488, 492 (199 SE2d 861) (1974). Factual inaccuracies that are only of 'peripheral relevancy to the showing of probable cause' do not go to the integrity of the affidavit. *Summerville v. State,* 226 Ga. 854, 858 (178 SE2d 162) (1970)." *Lee v. State,* 239 Ga. 769, 773 (3), 774 (238 SE2d 852).

(b) Defendant also contends the evidence seized pursuant to the warrant should have been suppressed because the affidavit did not show how the items to be seized pertained to the crime. In this connection, defendant points out that the affidavit describes the crimes as kidnapping, rape, and sodomy and that the items to be seized (a ladies watch, diamond ring, gold necklace, driver's license, duct tape, head and body hair and a pocketknife) are described in the affidavit as "fruits" of the crimes. Completing the argument, defendant contends that none of the items can be described as "fruits" of the crimes since (1) "robbery" is not listed as one of the crimes and (2) some of the items are "instrumentalities" of the crimes. We find this argument to be without merit.

" '(T)he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. . . . [A]ffidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and

haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting. . . . Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' United States v. Ventresca, 380 U. S. 102, 108 (85 SC 741, 13 LE2d 684). Accord, *Driscoll v. State*, 129 Ga. App. 702 (201 SE2d 11)." *State v. Babb*, 134 Ga. App. 302, 303 (1) (214 SE2d 397).

Although the affidavit does not list "robbery" as a crime, the affiant-officer states that he has "probable cause to believe that the *items taken* from [the victim] are at [defendant's] residence or in his vehicle. . . ." (Emphasis supplied.) Moreover, the affidavit states that duct tape was used to subjugate the victim. It is obvious, therefore, that the items to be seized were either fruits (jewelry, driver's license), instrumentalities (duct tape, pocketknife) or evidence (head and body hair) of the crimes. A "practical, common sense" reading of the affidavit revealed probable cause to believe that the described items would be found in a particular place, i.e., defendant's residence or vehicle. See *Keller v. State*, 169 Ga. App. 596 (314 SE2d 255).

(c) Defendant asserts the trial court erred in failing to suppress evidence that was not listed in the warrant but that the officers seized nonetheless, to wit: brass knuckles, a pair of black pants and a typewritten, semi-autobiographical manuscript. In this regard, defendant argues that the incriminating nature of those three items was not immediately apparent. See *Whittington v. State*, 165 Ga. App. 763, 764 (302 SE2d 617); *Stone v. State*, 162 Ga. App. 654 (292 SE2d 525); *Cook v. State*, 134 Ga. App. 712, 715 (4) (215 SE2d 728). We find no error.

In the affidavit, the affiant-officer deposed that the victim was "beaten" by her assailant. Given that testimony, we think the officers executing the warrant were justified in seizing the brass knuckles — the incriminating nature of such a weapon was readily apparent. See *Whittington v. State*, 165 Ga. App. 763, 764, supra. (In fact, the brass knuckles were used by defendant in connection with a similar crime in which the victim was beaten severely. They were introduced by the State to prove that defendant was the perpetrator of that crime.)

The officers seized the black pants because the victim stated that her assailant wore such pants. In any event, the pants were not placed in evidence by the State.

Although the manuscript was not put in evidence, an agent of the Georgia Bureau of Investigation identified the manuscript, describing

it as an "unusual" "book" which appeared to be an autobiography and featured a "murder." Defendant objected to the agent's testimony, asserting the manuscript should have been suppressed. However, defendant gave a duplicate copy of the manuscript to his brother. (Defendant's brother gave the manuscript to the Georgia Bureau of Investigation; it, too, was identified and discussed at trial.) Thus, it cannot be said that the manuscript was the subject of Fourth Amendment protection. See *State v. Scott*, 159 Ga. App. 869, 870 (2), 871-872 (285 SE2d 599).

The trial court did not err in failing to grant defendant's motion to suppress evidence for any of the reasons asserted by defendant.

2. Defendant contends the trial court erred in refusing to permit him to present evidence at the hearing upon the motion for a new trial. In this connection, defendant asserts he was not permitted to subpoena a number of witnesses (including his father, brother, a former assistant district attorney who was originally assigned to handle this case, a secretary at the Macon Police Department who transcribed the victim's statement, the magistrate who issued the search warrants, various police officers, an ex-girl friend and the girl friend's sister) to compel them to attend and testify at the hearing.

It is axiomatic that reversible error does not exist without harm. *Hurston v. State*, 194 Ga. App. 226, 227 (390 SE2d 119). Defendant did not demonstrate what relevant, pertinent testimony the proposed witnesses would offer at the hearing on the motion for a new trial. Thus, defendant failed to show how he was harmed by the trial court's ruling and we find no reversible error.

3. Defendant also contends the police prejudiced his ability to garner exculpatory evidence from his automobile because they permitted a bank to repossess it. This contention is wholly meritless. Defendant failed to show what, if any, exculpatory evidence could have been obtained from his automobile. Besides, defendant had ample opportunity to inspect the automobile before it was repossessed and sold by the bank.

4. Next, defendant asserts that a lineup in which he participated was suggestive and tainted the victim's in-court identification. We disagree. "The evidence was sufficient to show that this line-up was not impermissibly suggestive. *Head v. State*, 235 Ga. 677, 678 (221 SE2d 435); *Payne v. State*, 233 Ga. 294 (210 SE2d 775). Furthermore, the trial court also was warranted in accepting the victim's in-court identification of [defendant], as one based upon a source independent of the line-up, i.e., the physical encounter at the time of the [crimes]. *Yancey v. State*, 232 Ga. 167 (205 SE2d 282)." *Smith v. State*, 137 Ga. App. 845 (2), 846 (225 SE2d 93).

5. Finally defendant asserts that the trial court erred in failing to find ineffective assistance on the part of his trial lawyer. This asser-

tion is without merit. " 'A trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless the finding is clearly erroneous.' " *Harris v. State*, 198 Ga. App. 503 (402 SE2d 62), rev'd on other grounds, 261 Ga. 386 (405 SE2d 482). The trial court's finding is supported by the record. There is no evidence whatsoever to demonstrate that defense counsel's performance was ineffective.

*Judgment affirmed. Cooper and Blackburn, JJ., concur.*

DECIDED JANUARY 22, 1993 —
RECONSIDERATION DENIED FEBRUARY 5, 1993 — ▮▮▮▮▮▮▮

*Floyd M. Buford, Jr.*, for appellant.
*Willis B. Sparks III, District Attorney, Thomas J. Matthews, Graham A. Thorpe, Assistant District Attorneys*, for appellee.