## S96A1324. SORRELLS v. THE STATE.
(476 SE2d 571)

CARLEY, Justice.

After a jury trial, Dean Sorrells was found guilty of two counts of malice murder, two counts of concealing a death, and two counts of theft by taking a motor vehicle belonging to one of the murder victims. For the murders, Sorrells was sentenced to consecutive life terms. For concealing the deaths, he was sentenced to concurrent twelve-month terms and, for the thefts by taking, to concurrent four-year terms. Pursuant to the trial court's grant of a motion for an out-

of-time appeal, Sorrells brings this appeal from the judgments of conviction and sentences entered on the jury's guilty verdicts.[1]

1. Osborn Clemmons and Constance Land were an engaged couple who shared Clemmons' house with Sorrells. In the late evening of February 16, 1984, Clemmons' neighbors heard two shots ring out from the direction of his house. Clemmons and Ms. Land never again were seen alive. However, Sorrells thereafter accessed Clemmons' house, placed calls from Clemmons' telephone and used Clemmons' automobile and motorcycle. On February 24, 1984, when Ms. Land, who was in the military, failed to report for duty, investigators went to Clemmons' house. They discovered two badly decomposed bodies in a bedroom. The bodies were identified as Clemmons' and Ms. Land's. Because of the gas emanating from a heater in the bedroom, it initially was assumed that the deaths had resulted from asphyxiation. After the bodies were released to the next-of-kin, Clemmons' body was interred and Ms. Land's body was cremated. Further investigation showed that the gas heater did not leak and that its safety valve worked properly. Moreover, although Clemmons was known to have been in possession of several hundred dollars, no money was found in his house. With the authorities now suspecting that the deaths might be homicides, Clemmons' body was exhumed and autopsied. The autopsy determined that Clemmons died as the result of a shotgun blast fired from a range of four-to-five feet. Suspicion began to focus upon Sorrells as the perpetrator, after it was learned that he had inquired about shotgun shells only days before the deaths and that a shotgun belonging to one of his relatives was missing. Moreover, after the deaths, Sorrells had been using cash to pay for purchases and he also had been driving Clemmons' automobile and motorcycle. Before his arrest, Sorrells made incriminating statements to his relatives and friends, including an admission that he opened the gas valve on the bedroom heater. Following his arrest, Sorrells made an additional incriminating admission to a fellow inmate.

(a) Sorrells enumerates the general grounds as to his convictions for the murder of Ms. Land and for the subsequent concealment of her death. His specific contention is that the State failed to prove it

---

[1] The crimes occurred in February 1984, but Sorrells was not indicted until May 1987. On September 2, 1988, the guilty verdicts were returned and, on that same date, the judgments of conviction and sentences also were entered. After Sorrells' motion for new trial was denied, he filed an untimely notice of appeal and, on March 15, 1995, his case was dismissed. Pursuant to *Rowland v. State*, 264 Ga. 872, 875 (2) (452 SE2d 756) (1995), however, he applied to the trial court for an out-of-time appeal and, on April 25, 1996, that relief was granted. A timely notice of appeal then was filed on April 29, 1996 and the case thereafter was docketed in this Court on May 7, 1996. The appeal was submitted for decision on July 1, 1996.

was Ms. Land's body that had been discovered lying next to Clemmons' or, in the alternative, that the State failed to prove that Ms. Land's death was a homicide.

Identity of a victim in a criminal case can be proven by circumstantial, as well as direct, evidence. *Edgehill v. State,* 253 Ga. 343, 344 (1) (320 SE2d 176) (1984); *Jester v. State,* 193 Ga. 202, 208 (1) (17 SE2d 736) (1941). Likewise, the cause of death in a homicide case may always be shown by circumstantial evidence. *Graham v. State,* 183 Ga. 881, 886 (189 SE 910) (1937). Here, it is undisputed that two bodies were found lying together in a bedroom of Clemmons' house. One was a man's body and the other was a woman's. The identity of the male as Clemmons and the cause of his death as a shotgun blast have not been questioned. There is evidence that Ms. Land was engaged to and lived with Clemmons and that, after two gunshots were overheard, neither ever again was seen alive. In Sorrells' own trial testimony, he acknowledged discovering the bodies and identified those bodies as Clemmons' and Ms. Land's. This evidence is sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt that Ms. Land, as well as Clemmons, had been murdered by a shotgun blast and that it was her homicide, as well as Clemmons', that Sorrells thereafter concealed. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Edgehill v. State,* supra at 344 (1).

(b) Sorrells also enumerates the general grounds as to his convictions for the theft by taking of Clemmons' automobile and motorcycle. Although the evidence authorizes a finding that Sorrells took the motor vehicles, he urges that there is no evidence of his intent to retain permanent possession thereof.

The law of this state defines the crime of theft by taking as the act of unlawfully taking another's property with the intent to withhold it "permanently *or* temporarily." (Emphasis supplied.) OCGA § 16-8-1 (1) (A). Thus, Sorrells' intent to take the motor vehicles "for his own temporary use without the owner's authorization evinces an intent to commit a theft." *Smith v. State,* 172 Ga. App. 356, 357 (2) (323 SE2d 257) (1984). The evidence also shows that Sorrells took the automobile and motorcycle on entirely separate occasions. Accordingly, his further contention that the two counts of theft by taking should be merged is without merit. *Graham v. State,* 266 Ga. 543, 544 (3) (468 SE2d 363) (1996).

2. According to Sorrells, Clemmons was a gambler and this was a possible motive for the murders. In support of this defensive contention, Sorrells was allowed to cross-examine the State's witnesses with regard to Clemmons' gambling activities. The trial court did, however, sustain the State's objection when one of its witnesses was asked the name of Clemmons' bookie. This evidentiary ruling is enu-

merated as error.

Evidence is relevant if it relates to the questions being tried and bears upon those questions either directly or indirectly. OCGA § 24-2-1. Although inquiry concerning Clemmons' gambling activities in general may have been relevant, the name of his bookie in specific appears to have no direct or indirect relevancy to Sorrells' guilt or innocence of the crimes charged. It follows there was no abuse of discretion in refusing to allow Sorrells to elicit that information from the State's witness. See *Lee v. State*, 258 Ga. 762, 763 (5) (374 SE2d 199) (1988).

3. Over objection that they were too gruesome, photographs of the victims' decomposed bodies were introduced into evidence. Notwithstanding their gruesomeness, such photographs are admissible if they illustrate the nature and location of the victims' wounds. *Drane v. State*, 265 Ga. 255, 260 (10) (455 SE2d 27) (1995). Illustration of the nature and location of the victims' wounds was especially important in this case, since those wounds had been overlooked when the bodies first were discovered. However, Sorrells urges that, before the photographs were admitted, the State should have been required to prove through other evidence that the initial failure to discover the gunshot wounds was attributable to the advanced state of decomposition depicted in the photographs. Contrary to this contention, the photographs were demonstrative evidence, which were admissible in order that the jurors could determine for themselves whether the condition of the victims' bodies was such as to obscure the gunshot wounds. "[A] criminal defendant has no right to prevent the jury from seeing the crime scene and the victims' injuries." *Godfrey v. State*, 243 Ga. 302, 304 (2) (253 SE2d 710) (1979). It follows that the trial court did not err in admitting the photographs.

4. Sorrells' brother was called as a witness for the State. When he gave testimony that was not consistent with his prior out-of-court statement, the trial court properly allowed the State to introduce that prior inconsistent statement into evidence. *Rollins v. State*, 262 Ga. 698, 699 (1) (425 SE2d 285) (1993).

5. On direct examination, a witness for the State gave an unresponsive answer referring to the fact that Sorrells had been "in jail in Alabama." The trial court overruled Sorrells' objection that this placed his character into evidence and this evidentiary ruling is enumerated as error.

There appears to be a split of authority on whether the reference to Sorrells' previous incarceration placed his character into evidence. In *Williams v. State*, 242 Ga. 757, 758-759 (2) (251 SE2d 254) (1978), this Court held that testimony by a State's witness that the defendant " 'had been sent to Grady jail . . .' falls short of placing [the defendant's] character into evidence. [Cits.]" See also *Bennett v.*

*State*, 177 Ga. App. 643, 644 (2) (340 SE2d 273) (1986) ("the mere statement that [a defendant] may have been in a jail for some undisclosed reason or indeterminate period of time does not place his character into evidence. [Cit.]"). In *Stanley v. State*, 250 Ga. 3-4 (1) (295 SE2d 315) (1982), however, this Court held that testimony that the defendant had been identified from his picture in "some mug books" and that such books consisted of " 'pictures of individuals that we have had previous cases on[,]' . . . identified the defendant as having a prior record of a criminal offense or offenses. His character was placed in evidence." See also *Richardson v. State*, 199 Ga. App. 10, 12 (2) (403 SE2d 877) (1991) ("questions and responses alluding to prior arrests . . . impermissibly placed [the defendant's] character in issue.").

To resolve this case, however, there is no need either to reconcile the seemingly inconsistent lines of cases or to overrule one line and adopt the other. Even assuming without deciding that it was error to fail to sustain the objection and give curative instructions to disregard the unresponsive answer regarding Sorrells' previous arrest, that error was harmless considering the overwhelming evidence of his guilt. *Hatcher v. State*, 251 Ga. 388, 389 (1) (306 SE2d 250) (1983); *Hodge v. State*, 239 Ga. 612, 613 (2) (238 SE2d 404) (1977).

6. Since no written request was made, the trial court did not err in failing to charge on lesser included offenses. *State v. Stonaker*, 236 Ga. 1, 2 (2, 3) (222 SE2d 354) (1976). Moreover, because Sorrells denied any involvement in the crimes, there was no evidence to authorize a charge on any crimes other than those for which he had been indicted. *Greene v. State*, 263 Ga. 466, 467 (1) (435 SE2d 607) (1993).

7. Sorrells urges that the trial court erred in failing to charge on mitigating circumstances in accordance with OCGA § 17-10-30. That statute relates to imposition of the death penalty. The death sentence was not being sought against Sorrells. It follows that this enumeration is without merit.

8. Sorrells urges that the trial court's instruction on the statute of limitations was confusing and "could have misled the jury as to the independence of the various charges. . . ." A review of the record shows that the trial court instructed, in effect, that the statute of limitations was not an issue as to any of the crimes charged. There is no contention that, contrary to this instruction, the statute of limitations had run as to any offense. Therefore, the instruction on the statute of limitations could not have misled the jury as to the "independence" of the various charges, since all the charges independently were within the applicable statutes of limitations. It follows that this enumeration is without merit. See *Mathis v. State*, 255 Ga. 542, 543 (3) (340 SE2d 602) (1986).

9. Sorrells urges that his convictions must be reversed because of the ineffectiveness of his trial counsel. In order to show he was denied the constitutional right to counsel, Sorrells must show that his trial counsel's actions fell below "an objective standard of reasonableness and that, but for the alleged ineffective act, there is a reasonable probability that the result of the proceeding would have been different. [Cits.]" *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993). The record shows that this issue was raised in a timely fashion in the amended motion for new trial filed by Sorrells' appellate counsel. *Thompson v. State*, 257 Ga. 386, 387 (2) (359 SE2d 664) (1987). The record further shows that the amended motion for new trial was denied after a hearing. However, no transcript of the hearing on the amended motion for new trial has been included in the record on appeal. Accordingly, we must presume that Sorrells failed to meet his burden of proving the ineffectiveness of his trial counsel and that the trial court correctly denied the motion for new trial on this ground. *Phinazee v. State*, 182 Ga. App. 45 (1) (354 SE2d 671) (1987).

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 7, 1996 —
RECONSIDERATION DENIED OCTOBER 31, 1996.

*Thompson, Price & Dozier, Ronald K. Thompson,* for appellant.
*R. J. Martin III, District Attorney, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Christopher S. Brasher, Assistant Attorney General,* for appellee.