A98A0333. DEAL v. THE STATE.
(503 SE2d 288)

Judge Harold R. Banke.

David Eric Deal was convicted of kidnapping with bodily injury, aggravated battery and aggravated assault. He enumerates 15 errors on appeal.

This case arose during the victim's early morning jog when Deal

---

ran up to her. As she activated her hand-held alarm, he grabbed her and struck her on top of her head with a length of rebar pipe. He continued beating her on her head, shoulders, chest and arms, striking at least 50 blows. Eventually, she fell, and he dragged her into some nearby woods where he started beating her again. The attack lasted approximately 15 minutes, at which point the man fled, leaving the victim bleeding and dazed.

Shortly after her release from the hospital, a police investigator presented the victim with a six-person photographic lineup. The victim immediately picked Deal's brother, Kevin. After the investigator obtained an arrest warrant, he learned that Kevin was in a mental institution and that Deal, who lived in the vicinity of the attack, bore a marked family resemblance to Kevin. When Deal gave inconsistent stories about his actions at the time of the attack, the investigator conducted a live lineup. The victim identified Deal. *Held*:

1. Deal enumerates as error the trial court's denial of his motion to suppress evidence of the photographic lineups, presumably as impermissibly suggestive.[1] The dispositive question in resolving this issue is whether the procedure used resulted " 'in a very substantial likelihood of irreparable misidentification.' " *Montgomery v. State,* 210 Ga. App. 147, 148 (3) (a) (435 SE2d 510) (1993). Here, the record shows the victim had ample opportunity to observe her attacker. She "saw his face in full view" during the 15-minute ordeal. The victim's testimony makes clear that her entire attention was on her attacker. She fully and accurately described his appearance to the investigator. At trial, she testified that "[h]is face is burned into my memory. I see it every day. It's been almost two years and I know that is him. 100 percent sure. I'll never forget that face." She exhibited similar certainty during the lineup. Considering these factors, we must conclude that in the totality of the circumstances, the procedures used in this case were not so impermissibly suggestive that misidentification could be substantially likely. *Isaacs v. State,* 213 Ga. App. 379, 380-381 (2) (444 SE2d 409) (1994).

The record refutes Deal's contention that he was taken into custody prior to the lineup on a pretextual arrest. The investigator testified that when he contacted Deal's probation officer he learned she was about to secure a warrant on Deal for failure to report and requested that she advise him when she did.

2. Deal contends the trial court erred in denying his motion in limine seeking to suppress testimony of an inmate witness presumably on the ground that his Sixth Amendment rights were violated

---

[1] This enumeration and several others do not clearly state the legal grounds of error. They simply state facts and then list cases without incorporating any legal argument. See Court of Appeals Rule 27 (c) (2).

because the inmate, Warren Rhodes, was acting as an agent for the State when he elicited inculpatory statements from Deal. Deal sought to suppress his purported statement to Rhodes that he initiated the early morning attack with a pipe intending to drag the victim into the woods and rape her.

The record shows that Rhodes made the initial contact with the assistant district attorney in charge of this case. At that time, he already had the information at issue. Rhodes testified that law enforcement had no knowledge of his talks with Deal and in no way instigated his actions. These facts refute Deal's argument. *Burgan v. State*, 258 Ga. 512, 515 (5) (371 SE2d 854) (1988) (" 'An inmate who acts upon the expectation of an unpromised reward does not thereby become an agent for the state.' ").

3. Deal maintains the trial court erred in admitting Rhodes' testimony because it was perjured and self-serving. He bases this contention on another inmate's testimony indicating that he saw Rhodes take some paperwork with Deal's name on it from Deal's locker. The other inmate, Conan Spence, testified that he then asked Rhodes if he was working on a lawsuit and Rhodes answered, "[N]o, ain't a lawsuit, just some legal work . . . I'm hoping . . . will get me out of jail." Notwithstanding Deal's inference to the contrary, there is absolutely no evidence that the State knowingly used false testimony to obtain Deal's conviction. Compare *Smith v. Zant*, 250 Ga. 645, 651 (301 SE2d 32) (1983). Spence's testimony, which did not directly contradict Rhodes, simply raised a credibility issue for the jury to resolve and did not establish perjury. See *Ward v. State*, 205 Ga. App. 504, 507 (3) (423 SE2d 288) (1992).

4. The trial court did not abuse its discretion by denying Deal's motion for continuance and/or change of venue based on purportedly prejudicial pretrial publicity. OCGA § 17-7-150 (a). Deal made no showing that the trial's setting was inherently prejudicial. *Moore v. State*, 224 Ga. App. 797, 799 (3) (481 SE2d 892) (1997). Although Deal cited three newspaper articles printed in the month prior to trial and a news broadcast on three channels, the court found the publicity only "minor," noting the absence of headlines and the small size of the articles back in the body of the paper. The trial court's review of the coverage did not reveal any extreme sensationalism. Id. at 800.

Nor did the jury selection process show actual prejudice. *Moore*, 224 Ga. App. at 799. Only eight venire members had been exposed to any media coverage about the case. Of those individuals, only two remembered enough about the coverage for Deal to seek their removal, and both were excused for cause. Because the trial court was able to seat a full panel of jurors untainted by pretrial publicity, Deal failed to show the prejudice necessary to justify a change of venue. Id. at 800. In light of these facts, we likewise find no abuse of

discretion in denying Deal's motion for continuance. *Curtis v. State*, 212 Ga. App. 237, 238 (2) (441 SE2d 776) (1994).

5. Deal claims the jury was not fair and impartial because two members attended grade, middle, and high school with a defense witness, Amy Sheperd. These jurors did not respond when asked on voir dire whether they knew her. At the motion for new trial hearing, however, Deal presented Sheperd's affidavit which stated that she knew the jurors. In light of Deal's failure to present any evidence that the jurors at issue knew Sheperd, notwithstanding her purported acquaintance with them, he failed to establish juror misconduct or any concomitant harm from the error alleged. *McLamb v. State*, 176 Ga. App. 727, 729 (3) (337 SE2d 360) (1985); see *Holcomb v. State*, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997).

6. Deal claims the trial court erred by refusing to ask the jury about its possible exposure to news accounts of the trial broadcast on the second day of trial. In declining, the court presumed that the jury had complied with its previous instruction to refrain from listening to trial coverage because Deal presented no evidence that this mandate had been violated. While the better practice in these circumstances would have been to question the jury about its media exposure, reversal is not required. See, e.g., *Guess v. State*, 264 Ga. 335, 338 (6) (443 SE2d 477) (1994); *Dent v. State*, 220 Ga. App. 147, 148 (2) (469 SE2d 311) (1996); *Edwards v. State*, 200 Ga. App. 580, 581 (1) (408 SE2d 802) (1991). Deal's failure to present evidence at the motion for new trial hearing that any juror was exposed to the coverage precludes him from establishing harm caused by the alleged error. See *Dennis v. State*, 226 Ga. App. 390, 391 (1) (486 SE2d 656) (1997); *Mozier v. State*, 207 Ga. App. 264, 268 (2) (427 SE2d 551) (1993).

7. The trial court did not abuse its discretion in denying Deal's motion for mistrial based upon prosecutorial overreaching and bad faith by attempting to prejudice the jury through the news media. *Edwards*, 200 Ga. App. at 582 (1). Deal presented no evidence of prosecutorial misconduct. See *Parrish v. State*, 160 Ga. App. 601, 604 (3) (287 SE2d 603) (1981).

8. The trial court did not abuse its discretion in denying Deal's motion for mistrial based upon the victim's statement, made while identifying Deal, that he had "grown a mustache since he's been in jail." See *Dorsey v. State*, 204 Ga. App. 71 (418 SE2d 426) (1992). Deal maintains that this statement improperly placed his character in issue. *Wright v. State*, 253 Ga. 1, 4 (3) (316 SE2d 445) (1984). We fail to see how the minor reference to Deal's incarceration on the instant charges placed his character in issue. See *Holloway v. State*, 190 Ga. App. 528, 529 (2) (379 SE2d 542) (1989) (post-arrest mug shot is not suggestive of prior arrests so as to place defendant's character in issue). Moreover, the trial court gave a proper curative instruction to

disregard the reference to the mustache. See *Dorsey*, 204 Ga. App. at 71. In these circumstances, we find no abuse of discretion.

9. The trial court did not abuse its discretion in allowing the State to use an old aerial photograph of the area surrounding the crime scene as demonstrative evidence, particularly when the trial court gave cautionary instructions to the jury. *Harvey v. State*, 175 Ga. App. 120, 122 (4) (332 SE2d 912) (1985). Defendants have no right to prevent the jury from seeing the crime scene. See *Sorrells v. State*, 267 Ga. 236, 239 (3) (476 SE2d 571) (1996). Moreover, Deal fails to set out the legal argument supporting this enumeration in his brief, and the objection he cites in the record was not to the use of the photograph, but to a witness drawing power lines on it. *McClain v. State*, 226 Ga. App. 714, 718 (3) (487 SE2d 471) (1997) (errors asserted for the first time on appeal are waived).

10. Deal argues that the trial court erred in permitting the State's witness to draw power lines on the above-mentioned aerial photograph because there was insufficient evidence as to their correctness. Because Deal failed to challenge the accuracy of the lines in the trial court, we need not reach this issue. *McClain*, 226 Ga. App. at 718 (3). Moreover, Deal failed to show how this demonstrative evidence harmed his case. See *Keanum v. State*, 212 Ga. App. 662, 663 (2) (442 SE2d 790) (1994) (error and ensuing harm required for reversal).

11. Deal maintains the trial court erred in admitting a graphic and prejudicial photograph of the initial wound to the top of the victim's head. Because the photograph was relevant to testimony regarding the nature and location of the victim's injuries, we must reject this argument. *Sorrells*, 267 Ga. at 239 (3); *Tiller v. State*, 218 Ga. App. 418, 419 (3) (461 SE2d 572) (1995).

12. Deal maintains the trial court erred in admitting a length of rebar found near the crime scene with what appeared to be blood and hair on it. We disagree.

Trial courts have broad discretion in the admission of evidence. *Parker v. State*, 226 Ga. App. 462, 463 (4) (486 SE2d 687) (1997). "A weapon is generally admissible if it is similar to one used in a crime, even though it is not the same one. [Cit.]" Id. at 463-464 (4). Here, the evidence showed the wounds were inflicted with a metal bar or pipe.

13. This same reasoning applies to Deal's contention that the trial court erred in admitting a photograph of the above-mentioned rebar. *Parker*, 226 Ga. App. at 463 (4).

14. Deal claims the trial court erred in denying his motion for directed verdict of acquittal. Because the appellate brief offers no grounds, argument, or citation of authority in support of this assertion, the enumeration is deemed abandoned. Court of Appeals Rule 27 (c) (2).

15. Deal contends that his aggravated battery sentence merged with the sentence for kidnapping with bodily injury. The facts do not support this assertion. There was sufficient evidence for the jury to find that the aggravated battery was complete before Deal committed kidnapping with bodily injury. The aggravated battery concluded when Deal delivered the initial blow to the top of the victim's head, a wound so seriously disfiguring that Deal objected to the admission of photographs depicting it. OCGA § 16-5-24 (a). The kidnapping with bodily injury occurred later, when Deal dragged the victim, weakened by the onslaught of blows, into the woods and continued to beat her. OCGA § 16-5-40 (a); *Robinson v. State*, 210 Ga. App. 175, 176 (2) (435 SE2d 466) (1993); see *Ellis v. State*, 181 Ga. App. 630, 634 (5) (353 SE2d 822) (1987).

*Judgment affirmed. Beasley and Ruffin, JJ., concur.*

DECIDED JUNE 10, 1998 —
RECONSIDERATION DENIED JUNE 25, 1998 — ▮▮▮▮▮▮▮

*Wayne L. Burnaine*, for appellant.
*Daniel J. Porter, District Attorney, Phil Wiley, Assistant District Attorney*, for appellee.