## A00A2193. WILLIAMS v. THE STATE.
### (546 SE2d 74)

ELLINGTON, Judge.

A Cobb County jury found Wallace James Williams guilty of aggravated assault with intent to rape, OCGA § 16-5-21 (a) (1), aggravated battery, OCGA § 16-5-24 (a), child molestation, OCGA § 16-6-4 (a), and cruelty to children, OCGA § 16-5-70 (b). Wallace appeals from the order denying his motion for new trial, challenging his aggravated battery conviction, the court's admission of certain evidence, the jury charge, the court's merging of offenses, and his trial counsel's effectiveness. Because the evidence was insufficient to support Williams' aggravated battery conviction, we must reverse that conviction.

Viewed in the light most favorable to the jury's verdict, the evidence shows that Williams attacked 13-year-old C. T. when she was alone at her uncle's house. Williams knocked at the door and asked to speak with C. T.'s uncle. When C. T. said her uncle was not home, Williams asked to use the telephone. Although C. T. did not know Wil-

liams, she let him into the house and handed him the telephone. Williams made two calls, then handed the phone back to C. T. He then asked C. T. if she was scared of him. C. T. asked Williams to leave; instead, he approached her, grabbed her arm, and touched her thigh. Williams chased C. T., grabbed her by the shoulders, and wrestled her into her uncle's bedroom. Once there, Williams pushed C. T. to the floor and tried to pull her shorts down. C. T. testified that she thought Williams was also trying to remove his pants. Williams called C. T. a "whore," yelled at her to shut up, felt C. T.'s legs and inner thigh, and stuck his fingers in C. T.'s mouth. When C. T. bit Williams, Williams retaliated by stepping on her face with his foot so hard that it left an imprint of his shoe's tread on her skin. During this struggle, C. T. grabbed the phone and acted as if she were going to call the police. Williams fled.

C. T. locked herself in the house and waited for her uncle to come home. When the uncle returned, he called the police. When C. T. told the responding detective that her attacker was short, very dark-skinned, and "cock-eyed," the uncle thought he knew who the man might be. Based on information from the uncle, the detective put together a photographic lineup, and C. T. selected Williams' photo from it immediately. Later that evening, the detective arrested Williams at his home. Williams smelled of an alcoholic beverage and appeared intoxicated. The detective noted that Williams' face and knees were scratched and that he looked like he had "been in a fight." The tread on Williams' tennis shoes was consistent with the marks on C. T.'s face. At trial, Williams admitted he drank a quart of beer that evening. He also admitted he struggled with C. T., but that it was in self-defense because C. T. had "lost all self-control" and attacked him.

C. T. testified that the bruises and scratches to her face healed completely within a month and left no scars. The photographs of C. T.'s face taken after the attack do not show any bleeding wounds or swelling. C. T. testified that after the attack, her face started "stinging real bad." However, the evidence shows that C. T. did not require immediate medical attention. In fact, she did not go to the hospital until several hours after the attack. The State adduced no evidence showing that C. T. needed or received any diagnostic tests, like x-rays; medical treatment, like anti-inflammatory drugs, bandages, or ice packs; or minor surgery, like stitches.

1. Williams argues that the evidence adduced was insufficient to support his conviction for aggravated battery. We agree. The aggravated battery statute provides, in relevant part, that a "person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by . . . *seriously disfiguring* his or her body or a member thereof." (Emphasis supplied.) OCGA § 16-5-24 (a).

"Black's Law Dictionary defines disfigurement as that which impairs or injures the appearance of a person, and defines serious as grave, or great. *Baker v. State*, 246 Ga. 317, 318 (2) (271 SE2d 360) (1980)." (Punctuation omitted.) *In the Interest of H. S.*, 199 Ga. App. 481 (405 SE2d 323) (1991). "To constitute the crime of aggravated battery, there is no requirement that, in addition to being 'serious,' the disfigurement of a victim be permanent." Id.

This Court has never attempted to illustrate what is meant by the term "seriously" in the "seriously disfiguring" element of aggravated battery, and the trial court is not required to give a charge explaining that term. See, e.g., *Perkins v. State*, 269 Ga. 791, 796 (5) (505 SE2d 16) (1998); *Levin v. State*, 222 Ga. App. 123, 127-128 (7) (473 SE2d 582) (1996); *Miller v. State*, 155 Ga. App. 54, 55-56 (4) (270 SE2d 466) (1980). Because the circumstances of each aggravated battery vary, whether disfigurement is serious is best resolved by the factfinder on a case-by-case basis. Consequently, what constitutes serious disfigurement is almost always a question for the jury. *Silvers v. State*, 245 Ga. App. 486 (1) (538 SE2d 135) (2000). That does not mean, however, that no threshold exists for determining whether disfiguring injuries meet the requisite level of seriousness for an aggravated battery charge.

The legislature has created three distinct categories of battery: simple battery, OCGA § 16-5-23 (offensive touching or physical harm); battery, OCGA § 16-5-23.1 (substantial physical harm or visible bodily injury); and aggravated battery, OCGA § 16-5-24 (loss of body member or serious disfigurement). These statutes evidence a legislative intent to categorize the types of battery by the severity of the harm inflicted and to provide harsher penalties for batteries that result in more severe bodily harm. For example, a simple battery is generally punished as a misdemeanor. See OCGA § 16-5-23 (b). The greater offense of battery, however, may be punished as a felony under certain circumstances and a prison sentence of up to five years imposed. OCGA § 16-5-23.1 (e), (f) (2), (i), (k). Aggravated battery, the most grave of the battery offenses, carries a maximum 20-year penalty. OCGA § 16-5-24 (b).

Pursuant to OCGA § 16-5-23.1, a person commits a battery when he "intentionally causes substantial physical harm or visible bodily harm to another." Thus, this intermediate battery offense requires something more than simple battery's offensive touching or physical harm. The injury must be manifest, that is, "capable of being perceived by a person other than the victim." OCGA § 16-5-23.1 (b). "[V]isible bodily harm," in fact, is defined to include, "but is not limited to, substantially blackened eyes, substantially swollen lips or other facial or body parts, or substantial bruises to body parts." OCGA § 16-5-23.1 (b). It logically follows then that, although "seri-

ously disfiguring" is not defined in OCGA § 16-5-24, it must require an injury more severe than the visible wounds used to illustrate the "visible bodily harm" required to support a battery conviction.

In every aggravated battery based upon a serious disfigurement, including those in which the disfigurement was temporary, the injury inflicted was more than a superficial wound, that is, a scrape, bruise, discoloration, or swelling. See, e.g., *Baker v. State*, 246 Ga. at 318 (2) (broken nose, deep lacerations requiring stitches, extensive bruising); *Penland v. State*, 229 Ga. 256, 257 (1) (190 SE2d 900) (1972) (massive bruising, cuts, and swelling resulting from head trauma that left the victim incoherent); *Ganas v. State*, 245 Ga. App. 645-646 (1) (a) (537 SE2d 758) (2000) (a broken and distended finger); *Silvers v. State*, 245 Ga. App. at 486 (1) (shattered nasal and sinus bones); *Ramsey v. State*, 233 Ga. App. 810-811 (1) (505 SE2d 779) (1998) (lacerations to face, ear, and neck requiring stitches); *Deal v. State*, 233 Ga. App. 79, 84 (15) (503 SE2d 288) (1998) (multiple, severe blows to the head requiring hospitalization); *McClain v. State*, 232 Ga. App. 282, 283 (1) (502 SE2d 266) (1998) (gasoline burns resulting in scarring); *Miller v. State*, 155 Ga. App. at 56-57 (4) (scarring from multiple gunshot wounds). We have found no case upholding an aggravated battery based upon injuries like those C. T. suffered. In fact, C. T.'s injuries are comparable to those found sufficient to support a conviction for battery. See *Hussey v. State*, 206 Ga. App. 122, 123 (2) (424 SE2d 374) (1992) (bruising caused by forceful prodding with foot); *Danzis v. State*, 198 Ga. App. 136, 137-138 (400 SE2d 671) (1990) (red scuff marks that turned into substantial bruising). The evidence in this case is sufficient to support a finding that C. T. suffered visible bodily harm and, as a consequence of that, her appearance was temporarily impaired by scratches and bruises. However, the evidence adduced is insufficient to support a finding that the disfigurement was serious. Because the State adduced no evidence from which the jury could infer that C. T.'s injuries were more significant, grave, or severe than the superficial, visible wounds that would typically support a battery conviction under OCGA § 16-5-23.1, the State has failed to carry its burden of proving the "seriously disfiguring" element of the offense of aggravated battery. Consequently, the evidence, when viewed in the light most favorable to the verdict, is insufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that Williams was guilty of aggravated battery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We must, therefore, reverse Williams' conviction for aggravated battery.

2. Williams claims the trial court erred in admitting C. T.'s statement that she believed Williams was trying to have sex with her because it went to an ultimate issue in the case. Williams, however,

did not object to C. T.'s testimony on this basis. "If counsel desires to preserve an objection upon a specific point, the objection must be on that specific ground. Otherwise, this court will not consider it." (Citations and punctuation omitted.) *Arnold v. State*, 236 Ga. App. 380, 383 (3) (511 SE2d 219) (1999).

3. Williams contends the court should have granted his motion for a mistrial because the State adduced testimony commenting on Williams' right to remain silent. We have reviewed the complained-of testimony and find that the State's questions focused on Williams' conduct immediately after what he claimed was an assault against him and did not inquire into his post-arrest silence. For example, because Williams testified on direct examination that C. T. attacked him, the State asked Williams on cross-examination why he did not report C. T.'s hysterical behavior and violent attack against him to anybody, including C. T.'s uncle or the police. Williams was not being impeached with his silence in the face of an accusation or with a tacit admission, but with his failure to immediately report what he claims was a crime against him. See *Miller v. State*, 228 Ga. App. 754, 755 (2) (492 SE2d 734) (1997). We find no error.

4. Williams contends the court erred in failing to charge the jury on battery and simple battery as lesser included offenses of the crimes of aggravated assault with intent to rape and child molestation. The court did, however, charge on battery and simple battery as lesser included offenses of aggravated battery and cruelty to children.

In *Edwards v. State*, 264 Ga. 131 (442 SE2d 444) (1994), the Supreme Court held that

> The complete rule with regard to giving a defendant's requested charge on a lesser included offense is: where the state's evidence establishes all of the elements of an offense and there is no evidence raising the lesser offense, there is no error in failing to give a charge on the lesser offense.

(Citation and emphasis omitted.) Id. at 133. Here, Williams' defense was self-defense. The State's evidence established the elements of aggravated assault with intent to rape. Contrary to Williams' argument, the evidence showed either the commission of the completed offenses of aggravated assault with intent to rape and child molestation as charged or the commission of no offense. Consequently, there was no error in the court's failure to charge the lesser offenses. See *Huckeba v. State*, 217 Ga. App. 472, 475-476 (3) (458 SE2d 131) (1995) (aggravated assault with intent to rape); *Ney v. State*, 227 Ga. App. 496, 503 (4) (g) (489 SE2d 509) (1997) (child molestation).

5. The trial court charged the jury that Williams had no duty to

retreat before being justified in using force to defend himself. Williams contends the charge was an incorrect statement of the law. Williams, however, requested the charge as drafted. That request precludes a finding of error now because "on appeal, one cannot complain of a judgment, order, ruling, or charge that his own procedure or conduct aided in causing." (Citations and punctuation omitted.) *Billingsley v. State*, 220 Ga. App. 69, 70 (2) (467 SE2d 377) (1996).

6. Williams argues that all the offenses for which he was convicted should have merged. Because the trial court merged the aggravated assault with intent to rape and the child molestation convictions, and because we reversed Williams' aggravated battery conviction in Division 1, the only merger issue before us is whether the cruelty to children conviction merges into either of the remaining convictions.

Our review of the indictment reveals that different facts were alleged to support the child molestation, aggravated assault, and cruelty to children charges. Further, there was evidence from which the jury could have found that Williams committed the offenses based upon the facts alleged. Specifically, the cruelty to children charge alleged that Williams maliciously caused C. T. cruel and excessive mental pain by "biting her face and stomping on her face with his foot" — an act not alleged in either the child molestation or assault with intent to rape charges. Although the various acts alleged were committed in close temporal proximity, the offenses were committed sequentially. Specifically, after Williams lay on top of C. T. and felt her thigh (the acts supporting the child molestation charge), he then bit her and stomped on her face with his shoe. Thus, the offense constituting cruelty to children was based upon and committed in a way different from the remaining offenses and was not satisfied by the introduction of the same evidence. Therefore, there was no merger, and we do not find that the trial court erred in entering a separate conviction on cruelty to children. See *Walker v. State*, 214 Ga. App. 777, 780 (6) (449 SE2d 322) (1994). Because the trial court merged this conviction into the aggravated battery conviction and imposed sentence for that greater, but now reversed, offense, we must remand to the trial court for sentencing on the cruelty to children conviction.

7. Williams contends he is entitled to a new trial because his trial counsel was ineffective. Williams complains that his trial counsel's performance was deficient because he failed to call a defense witness, do DNA blood testing on Williams' tennis shoes, and to introduce C. T.'s medical records into evidence.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense. *Smith v.*

*Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985) (citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)). The first prong of this test cannot be met unless a defendant overcomes the "strong presumption" that his counsel's performance fell within the "wide range of reasonable professional conduct" and his counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The inquiry focuses on the reasonableness of counsel's conduct from counsel's perspective at the time of trial. Id. Thus, the courts will not second-guess counsel's decisions concerning matters of trial strategy and tactics. See *Williams v. State*, 265 Ga. 681, 682 (1) (461 SE2d 530) (1995). With regard to the second prong, Williams had to show that the alleged deficient performance actually prejudiced his case, that is, that there was a reasonable probability the jury would have reached a different verdict absent the error of counsel. See *Concepcion v. State*, 205 Ga. App. 138, 139 (421 SE2d 554) (1992).

(a) The transcript of the motion for new trial hearing reveals that Williams' attorney made a tactical decision not to call defense witness Charles Zellars. Williams argues that Zellars would have testified that his knees were scratched and bruised in an incident that occurred a few nights before the events involving C. T. Williams' attorney testified that he determined Zellars' testimony was more damaging than helpful in that it would have made Williams out to be a complete drunkard and, consequently, unbelievable. Further, the attorney wanted to preserve his right to open and close final argument. "The decisions on which witnesses to call . . . and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client." (Citations and punctuation omitted.) *Austin v. Carter*, 248 Ga. 775, 779 (2) (c) (285 SE2d 542) (1982). "Whether an attorney's trial tactics are reasonable 'is a question of law,' not fact." (Citation omitted.) *Jefferson v. Zant*, 263 Ga. 316, 318 (3) (a) (431 SE2d 110) (1993). Because opening and closing argument is a valuable right, the trial court was authorized to conclude that the preservation of that tactical advantage was a reasonable strategy for Williams' defense attorney to pursue. See generally *Givens v. State*, 264 Ga. 522, 523 (1) (448 SE2d 687) (1994) (recognizing that the right to open and close is important and that erroneous denial of that right gives rise to presumption of harm). We find that trial counsel's tactical decision was not deficient performance.

(b) Williams complains that his attorney should have done DNA testing on Williams' tennis shoes to show that any blood on them was his and not C. T.'s. Williams' attorney testified that he saw little value in such a test when Williams admitted, as part of his defense of self-defense, that he "pried" C. T. off of him by putting his shoe to her face. Because Williams has failed to show that any deficiency so prej-

udiced his defense that a reasonable possibility exists that the trial's outcome would have been different but for that deficiency, we find no error. See, e.g., *Milner v. State*, 271 Ga. 578, 579 (2), (3) (522 SE2d 654) (1999).

(c) Finally, Williams argues that his attorney should have introduced C. T.'s medical records into evidence to show that she was not seriously injured. Because the photographic evidence and the testimony from C. T. and other State's witnesses amply revealed the limited extent of C. T.'s injuries, the medical records would have been redundant. For the reasons stated in Division 7 (b), we find no error.

*Judgment affirmed in part, reversed in part, and remanded in part for resentencing. Andrews, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 28, 2001.

*Derek H. Jones*, for appellant.

*Patrick H. Head, District Attorney, Eleanor A. Kornahrens, Maria B. Golick, Bruce D. Hornbuckle, Assistant District Attorneys*, for appellee.