26029. SUMMERVILLE et al. v. THE STATE.

Argued September 17, 1970—Decided November 5, 1970.

*Hester & Hester, Frank B. Hester, Richard M. Hester,* for appellants.

*Lewis R. Slaton, District Attorney, Carter Goode, Tony H. Hight, Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Marion O. Gordon, Assistant Attorney General, Charles B. Merrill, Jr., Deputy Assistant Attorney General,* for appellee.

ALMAND, Chief Justice. The appellants were jointly indicted, tried and convicted, under two indictments. One charged them with taking a motor vehicle and a named sum of money, the property of Big Apple Super Markets, by intimidation and by use of a pistol, on March 19, 1970. The other indictment charged them with taking a named sum of money, the property of Big Apple Super Market, by intimidation and use of a pistol, on March 17, 1970.

Their joint motions for a new trial were overruled and their joint appeal is here for review. Error is enumerated on: (1) overruling motions to suppress evidence; (2) allowing, over objection, the testimony of Detective T. J. Smith, concerning line-up identifications made by State witnesses; and (3) submitting to one jury the issue of innocence or guilt as well as the issue of punishment.

■ Motion to suppress evidence: Defendants Summerville and Williams filed motions to suppress evidence obtained by an alleged illegal search. The grounds of the motion were that a search warrant was isued by the Judge of Polk Superior Court based on an affidavit of Bobby Burch, Chief of Police of Rockmart, Ga., and that the alleged facts were actually false and did not show probable cause, in violation of their constitutional rights under stated provisions of the Constitutions of the United States and the State of Georgia prohibiting unlawful search and seizure.

Two search warrants were issued on March 22, both based on affidavits of Bobby Burch. One was for the search of the premises of Truman H. Williams, Jones Avenue, Rockmart, Ga., "a duplex apartment." The other was for the search of the premises of James Leon "Joe" Summerville, located at 302

Hampton Street, Rockmart, Ga. The affidavits recited that affiant had reasonable cause to believe that a named person had committed the offense of armed robbery and had in his possession tangible evidence comprised of "money and currency money wrappers, American Express blank money orders bearing numbers according to the list attached hereto and a ski mask being black with red rings . . . and a .38 caliber revolver bearing serial No. 733911." The probable cause was stated as follows:

"Charles W. Brooks, and his wife and family, all of 1832 Kimberly Road, SW, Atlanta, Ga., have positively identified said person as being one of three perpetrators of an armed robbery committed on March 17, 1970, against said C. W. Brooks and the Big Apple Food Store located at 2581 Piedmont Rd., NE, Atlanta of which Mr. Brooks is manager. Identification of each of said three persons was made from police photographs and drivers license photos. Identification was positive by Mr. Brooks, who was an eyewitness and the victim of said armed robbery.

"Affiant received the above information from Detective T. J. Smith, of the Atlanta Police Department Robbery Squad, who received same from Charles W. Brooks. Detective Smith attested to the reliability of said Brooks, and of his truthfulness and veracity to affiant.

"All the above named items of tangible evidence are the fruits and instrumentalities of said armed robbery and are believed to be in the possession of either James Leon 'Joe' Summerville, Truman H. Williams, or Danny Millican, or any of them, at the residence of one or more of said persons, they being the three perpetrators identified by Brooks."

The evidence which the defendants sought to suppress consisted of a pistol, a red, white and blue ski mask, a black ski mask with yellow eyes and white mouth, and a pillow containing unidentified money.

On the hearing of the motion to suppress, T. J. Smith, a detective of the Atlanta Police Department, testified that he investigated the reports of the robberies of the two Big Apple Stores. He obtained pictures of the three defendants, exhibited

them to C. W. Brooks, the Manager of the Jamestown Big Apple Store, who identified Millican and Summerville as being two of the three who robbed the store. Smith conveyed this fact to Chief Burch of the Rockmart Police force and upon this information Burch made the affidavit. Burch testified that the facts given by him at the time he swore to the affidavit were true as far as he was concerned.

The grounds upon which the motion to suppress was based were that certain facts and statements in Burch's affidavits were not true, viz., the statement therein that, "Charles W. Brooks, and his wife and family, all of 1832 Kimberly Road, SW, Atlanta, Ga., have positively identified said person as being one of three perpetrators of an armed robbery committed on March 17, 1970, against said C. W. Brooks and the Big Apple Store located at 2581 Piedmont Rd., NE, Atlanta, of which Mr. Brooks is Manager."

We are of the opinion that the ruling in Rugendorf v. United States, 376 U. S. 528 (84 SC 825, 11 LE2d 887), sustains the ruling of the trial court in overruling the motion to suppress. The court there held: "Petitioner attacks the validity of the search warrant. This court has never passed directly on the extent to which a court may permit such examination when the search warrant is valid on its face and when the allegations of the underlying affidavit establish 'probable cause'; however, assuming, for the purpose of this decision, that such attack may be made, we are of the opinion that the search warrant here is valid. Petitioner contends that probable cause did not exist because the only relevant recitations in the affidavit were the one informant's statements that he saw the furs in petitioner's basement and that he was told that they were stolen. However, the informant's detailed description of the furs, including number and type, closely resembled Special Agent Paarmann's description of the furs stolen in Alabama. The affiant checked the burglary report records and found the Alabama burglary to be the only recent one in the United States involving furs of the description and number that the informant saw in the petitioner's basement.

"In addition, the affidavit alleged that Leo and Samuel

Rugendorf were brothers and that Leo was a fence for professional burglars. Although one of the informants who gave the latter information added, incorrectly, that Samuel Rugendorf was associated with Leo in the meat business, there was direct information from another informant of the FBI that Leo was a fence, and nothing was shown to prove this untrue. The factual inaccuracies depended upon by petitioner to destroy probable cause—i.e., the allegations in the affidavit that petitioner was the manager of Rugendorf Brothers Meat Market and that he was associated with his brother Leo in the meat business—were of only peripheral relevancy to the showing of probable cause, and, not being within the personal knowledge of the affiant, did not go to the integrity of the affidavit. . . Petitioner's only challenges to the veracity of the affidavit are the two inaccurate facts mentioned above. Since the erroneous statements that petitioner was the manager of Rugendorf Brothers Meat Market and was associated with Leo in the meat business were not those of the affiant, they fail to show that the affiant was in bad faith or that he made any misrepresentations to the Commissioner in securing the warrant."

Chief Burch swore to the facts related to him by Detective Smith as he understood them to be, and counsel for the defendants on cross examining Chief Burch stated: "Nobody suggested that you knowingly and falsely swore to anything."

Sufficient facts were stated in the affidavit to show probable cause and that showing was in no way affected by the factual inaccuracies complained of.

■ The second enumeration of error is that the court erred in allowing, over objection, the testimony of Detective Smith concerning the line-up identifications made by two State witnesses. The line-up was allegedly conducted in violation of the defendants' constitutional right to the benefit of counsel, due process and equal protection of law as provided in the Sixth Amendment to the Constitution of the United States and Art. I, Sec. I, Par. III of the Constitution of the State of Georgia (Code Ann. § 2-103). Appellant alleges that the post-indictment pre-trial line-up, at which the defendants were exhibited to identifying witnesses, was held without notice and in the absence

of defendants' employed counsel, citing United States v. Wade, 388 U. S. 218 (87 SC 1926, 18 LE2d 1149).

The pertinent facts as to this ground are: in the morning hours of March 23, 1970, the defendants were told by an officer that they would be placed in a line-up around 8:30 or 9 o'clock the following night; as the defendants were being taken to the place where the line-up was to be had, one of the defendants informed the detectives that Mr. Frank Hester, an attorney, represented one or all of them. An effort was made to get in touch with Mr. Hester and it was learned that he was not expected until very late at night. A call was made to the district attorney and he requested Mr. Matthews, an attorney on the staff of the Public Defender of the Indigent in Fulton County, to attend the line-up. Matthews went to the police station and he advised them who he was and that he would be present at the line-up. Though expressing dissatisfaction that Hester was not present, no defendant advised Matthews that he or they would prefer to wait for Hester. All three were placed in the line-up. Matthews testified that he checked the line-up over and it appeared to be fair. Shortly after the line-up proceedings had commenced, a telephone call from Hester was received saying that he was on his way to the police station and the proceedings were stopped pending his arrival. Before his arrival, State witnesses Brooks and St. John had viewed the line-up and made identification. Matthews advised Hester as to what had taken place and took no further part in the proceedings. It does not appear from the transcript of the record that Hester or either defendant, had notified the officers that Hester represented the defendants at the time the line-up was set. After Hester arrived, the line-up was set up again and in his presence St. John again viewed the line. Witness Brooks, who had left, made his identification again the next day in Attorney Hester's presence. Matthews testified that, upon his arrival at the police station, the reason given for holding the line-up on this night was, "a lot of witnesses from different counties or something and that they would be very much inconvenienced if the line-up didn't take place because they had witnesses from several counties, sheriffs and whatnot."

There were 25 to 30 witnesses, some from out of town, present at the line-up.

On the trial of the case C. W. Brooks, Sr., testified for the State that defendant Williams was, at the time of the robbery, in his presence, in a lighted room, for about 25 minutes, and that none of his face was covered. He positively identified Millican as having entered through the back door of the kitchen with a gun in his hand. He testified that Summerville and Williams took him to the store. When the photographs of the defendants were shown to Brooks, he was positive as to Millican. At the line-up, St. John identified Millican and Williams positively.

Appellant cites the Wade case, supra, to support his contention, but in a footnote in that case (p. 237) is this statement: "Although the right to counsel usually means a right to the suspect's own counsel, provision for substitute counsel may be justified on the ground that the substitute counsel's presence may eliminate the hazards which render the line-up a critical stage for the presence of the suspect's own counsel."

Under the facts of this case, and the rule stated above, the admission of the line-up identification by Brooks where the substitute counsel, and not the employed counsel, was present was not error.

We hold the second enumeration of error to be without merit.

■ The third enumeration of error complains of the submission of the issue of punishment to the same jury which found the appellant guilty.

The unanimous opinion in Chatterton v. State, 223 Ga. 243 (154 SE2d 213) settles this issue adversely to the claim of these appellants.

■ The evidence fully supports the verdicts.

*Judgment affirmed. All the Justices concur.*