## 48103. UNDERHILL et al. v. THE STATE.

SUBMITTED APRIL 3, 1973 — DECIDED APRIL 13, 1973 — REHEARING DENIED MAY 9, 1973.

*Zachary & Land, Stephen A. Land,* for appellants.

*Lewis R. Slaton, District Attorney, Carter Goode, Morris H. Rosenberg,* for appellee.

DEEN, Judge. ■ One of the duties of superior court clerks is to maintain a "docket of criminal cases, to be known as the dead

docket, to which cases shall be transferred at the discretion of the presiding judge, and which shall only be called at his pleasure." Code § 24-2714 (7). We agree with the appellant that the court's discretion may not be used in an unlawful manner, for instance, to keep an indictment hanging over the head of the defendant merely to toll the running of the statute of limitations. Such a situation could be analogized to the former suspended sentence law, where, as was held in *Wood v. State,* 68 Ga. App. 43 (f) (21 SE2d 915), it could be treated as a probated sentence and revoked prior to the expiration of the original sentence, but not thereafter. Again, without regard to any statute of limitations, the defendant has sixth amendment rights to a speedy trial which may be implemented by a written demand for trial under Code § 27-1901, but which remain even if not so implemented. "The demand statute is only one device by which the defendant may assert this right." *Newman v. State,* 121 Ga. App. 692, 694 (175 SE2d 144). The dead docket device may not be used to delay the trial over the defendant's objection. Where *mere* lapse of time, less than that set out in the statute of limitations, is involved, and the defendant has not objected to the case being dead docketed, and has made no demand for early trial, it will take a showing of prejudice to the defendant's interests or oppressive and harassing tactics by the government to justify a finding of encroachment on the constitutional right to a speedy trial. "This court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker v. Wingo, 407 U. S. 514, 532 (92 SC 2182, 33 LE2d 101). The fact that the first indictment was quashed and a second one preferred does not operate to extend the time. Bryant v. Blount (Fla.) 261 S. 2d 847. Here the defendant was out on bail at the time and the state correctly takes the position that placing the case on the dead docket, and the statement of the district attorney at the time that "this will put your man on the streets" amounted to acquiescence in treating the bond as satisfied. It does not appear that the defense was impaired; no witnesses had been subpoenaed for the prior trial date and there is no contention that length of delay has made witnesses unavailable or testimony less certain. While the attorney who formerly represented the defendants testified at the behest of their present counsel that he thought the dead docket procedure would in fact put an end to the case and eventually destroyed his notes and file, he does not really raise the

issue of prejudice and the fact that he went down on the first trial date relying primarily on the motion to suppress indicates that there was none. In Barker v. Wingo, supra, the fact that "Barker was prejudiced to some extent by living for over four years under a cloud of suspicion and anxiety" was considered to be overshadowed by the fact that it was shown that Barker himself was not anxious for the case to go to trial. The same situation exists here. The defendant consented to and took his chances on the dead docket procedure; it does not appear that his defense has been impaired as a result. We conclude that his constitutional rights were not violated under these circumstances.

■ The question here basically is whether search of the automobile, under a warrant concededly void but not known at the time to be so, was reasonable within the purview of constitutional requirements. The following facts were known to police involved in the search: A large quantity of coins had recently been stolen from a coin shop which had been burglarized by breaking into an adjoining building and making a hole through a brick wall into the coin shop restroom. A police officer in Hackensack, New Jersey, shortly thereafter notified Atlanta police that they had information as to this burglary, correctly describing the method of entry, and that the coins were located in the home of the defendants. On the day of the search Mrs. Underhill was at home and Mr. Underhill was at his office. The police went first to the office and notified Mr. Underhill that his home was about to be searched and that he and his attorney might be present if they so desired; they then permitted him to make an unmonitored telephone call. Immediately thereafter other officers posted near the residence observed activity in the house, heard slamming of house and car doors a number of times, and then observed Mrs. Underhill drive the vehicle out of the driveway. Its rear end was heavily weighted so that the rear springs dipped excessively and the rear tires were flattened. Clothing was spread out over the back seat. The car was stopped; Mrs. Underhill was perspiring and short of breath as one recently engaged in heavy physical exertion. Mrs. Underhill had a foreign driver's license and expired tag and was arrested on this charge. The car was removed to the police station and searched the same day under the void warrant.

In Chambers v. Maroney, 399 U. S. 542 (90 SC 1975, 26 LE2d 419), the stopping and searching of an automobile based on a description by eyewitnesses to a recent holdup which had come over the police radio shortly before was held not an invasion of

Fourth Amendment rights because (1) based on the correspondence of detail between what they saw and the information given them there was probable cause to believe that the vehicle contained evidence or loot from the robbery, and (2) there were exigent circumstances in that if the officers waited to obtain a search warrant the car and its occupants would escape. It was also held that if the vehicle could have been searched on the spot the probable cause factor still obtained at the station house to which it was removed. See to the same effect *Hunter v. State,* 127 Ga. App. 664 (194 SE2d 680); *Whitlock v. State,* 124 Ga. App. 599 (185 SE2d 90); *Williams v. State,* 125 Ga. App. 170 (1) (186 SE2d 756). The same circumstances obtain here. As to the information received from the New Jersey police, it appears from *Summerville v. State,* 226 Ga. 854 (1) (178 SE2d 162) that factual information relayed by police to other law enforcement officers is not per se subject to a "double hearsay" objection, and that the received tip in New Jersey contained information as to the manner of effecting the burglary which would not have been known at that distance by a person not closely involved. A warrantless search of a motor vehicle is judged by standards more lenient than those applying to nonmoveable property, the probable cause factor to be determined by the facts before the officers at the time of search. *Satterfield v. State,* 127 Ga. App. 528 (4) (194 SE2d 295). In this particular case, where the owner had knowledge that a search warrant was in course of being procured for the purpose of locating a heavy cache of stolen coins thought to be in his home, where he had both motive and opportunity to inform his wife of this fact, and where, moments before the warrant arrived she drove away in a heavily laden car, we find the detention of the vehicle and its ultimate search to be reasonable by constitutional standards.

The motion to suppress was properly denied.

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*