S06A1686. BBC LAND & DEVELOPMENT, INC. et al. v. BUTTS COUNTY et al.

(640 SE2d 33)

BENHAM, Justice.

This appeal concerns the question whether vested rights to build in accordance with prior zoning requirements are transferable. Appellants BBC Land & Development, Inc. (hereinafter, BBC) and JohnScar, LLC (hereinafter, JohnScar) each bought property in Butts County for development. Both properties were zoned R-1-C, which at the time of appellants' purchases permitted construction of homes with a minimum size of 1,500 square feet. Both developers submitted plats showing houses of that size. After the County approved the plats and both developers expended money developing the properties consistent with the existing zoning, the County amended the zoning ordinance to provide for a minimum house size of 2,000 square feet in R-1-C. The developers subsequently sold lots in the subdivisions to builders, including appellant HTB Builders, Inc. When applications by the builders for building permits were denied on the ground the planned houses did not comply with the 2,000-square-foot limit of the R-1-C zoning classification, BBC, JohnScar, and HTB sued Butts County seeking injunctive relief, mandamus, declaratory judgment, and damages. The trial court's judgment held, pursuant to the parties' stipulation, that the developers had acquired vested rights to build on the property in accordance with the prior zoning, citing *WMM Properties, Inc. v. Cobb County*, 255 Ga. 436 (339 SE2d 252) (1986), but concluded that those vested rights were not transferable to subsequent purchasers. This appeal is from the trial court's denial of the equitable and extraordinary relief sought by appellants.

Appellants' position is that a landowner's vested right to develop land in accordance with previous zoning attaches to the land and benefits a subsequent purchaser. Appellants concede there is no Georgia law establishing that proposition and argue instead that such vested rights are analogous to nonconforming uses, and since nonconforming uses run with the land to the benefit of successors in title (see, e.g., *Ansley House, Inc. v. City of Atlanta*, 260 Ga. 540 (397 SE2d 419) (1990)), so should the vested rights of the landowner. Because there are crucial differences between a nonconforming use and a landowner's vested right to build in accordance with prior zoning, we do not accept appellants' analogy or the conclusion they draw from it.

One crucial difference between vested rights and nonconforming uses is temporal. "Nonconforming uses are uses of structures which were existing prior to the enactment of an ordinance rendering them nonconforming." *Corey Outdoor Advertising v. Board of Zoning &c. of Atlanta*, 254 Ga. 221, 226 (4) (327 SE2d 178) (1985). " 'A use which is merely contemplated for the future but unrealized as of the effective date of the regulation' does not constitute a nonconforming use. [Cit.]" *North Ga. Mountain Crisis Network v. City of Blue Ridge*, 248 Ga. App. 450, 452 (1) (546 SE2d 850) (2001). By contrast, a landowner's vested right to build in accordance with previous zoning relates to the future, to an unrealized use of land.

Another crucial difference is the degree to which each is defeasible. A vested right is one which cannot be divested without the consent of the person to whom it belongs. *Goldrush II v. City of Marietta*, 267 Ga. 683, 694 (7) (482 SE2d 347) (1997). A nonconforming use, however, is not so indefeasible since "[a] governing authority can require a nonconforming use to be terminated in a reasonable time. [Cits.]" *Flippen Alliance for Community Empowerment v. Brannan*, 267 Ga. App. 134, 137 (2) (601 SE2d 106) (2004).

Perhaps the most telling difference with regard to the question of transferability with the land is the way vested rights and nonconforming uses come into being. Vested rights to develop property in accordance with prior zoning, and therefore not in accordance with current zoning, come into being because the owner of the rights has made a substantial change of position in relation to the land, has made substantial expenditures, or has incurred substantial obligations. *Goldrush II v. City of Marietta*, supra, 267 Ga. at 698; *WMM Properties, Inc. v. Cobb County*, supra, 255 Ga. at 439. Nonconforming uses come into being initially as legal uses, *Corey Outdoor Advertising v. Board of Zoning &c. of Atlanta*, supra, 254 Ga. at 227, and become nonconforming because of a subsequent change of zoning. Id. at 226. Thus, while vested rights to develop property in accordance with prior zoning come into being because of the investment of the

owner and may thus appropriately be deemed the property of the owner, a nonconforming use develops because of actions of the governing authority and, not being due to any action of the owner, becomes part of the character of the property.

We conclude, therefore, based on the difference between nonconforming uses and vested rights to develop property in accordance with prior zoning, and especially on the nature of the vested rights as a property interest of the owner of the property, earned by the owner's substantial change of position in relation to the land, substantial expenditures, or incurring of substantial obligations, that vested rights to develop property in accordance with prior zoning are personal to the owner of them and are not transferable with the land.

Finally, appellants argue that such a holding is contrary to the holding in *Goldrush II v. City of Marietta*, supra, 267 Ga. at 694, that an owner cannot be divested of a vested right without his consent. However, since appellants are fully entitled to exercise the rights themselves so long as they own the property, and the choice to sell the property is voluntary, any loss of the right occasioned by the sale must be considered to be with appellants' consent. Thus, the holding that the rights in question are not transferable does not divest appellants BBC and JohnScar of any right without their consent.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 8, 2007.

*Fincher, Denmark & Williams, Steven M. Fincher, Winston A. Denmark,* for appellants.

*Fears, Lawrence & Turner, Kenneth G. Lawrence, O'Quinn & Cronin, Michael A. O'Quinn, J. Kevin Walters,* for appellees.

## S06A1755. CHRISTIAN v. THE STATE.
(640 SE2d 21)

CARLEY, Justice.

After a bench trial, Appellant Cheryl Christian was found guilty of felony murder of her three-year-old daughter. She was also found guilty on separate counts of cruelty to children and aggravated assault on the young victim. The predicate felony for the murder conviction was cruelty to children, which offense, as alleged in the indictment, consisted of Appellant's act of striking her daughter in the abdomen with an unknown object. After entering judgments of conviction on its findings of guilt, the trial court imposed a life sentence for murder, and concurrent 20-year sentences for the other

two crimes. Subsequently, the trial court denied Appellant's motion for new trial, and she appeals.[*]

1. At the time of her death, the child weighed only 27 pounds. The medical examiner testified that, in his opinion, she died within an hour or so after being hit in the abdomen, and that the fatal blow was not inflicted accidentally. During the relevant time period, Appellant was the only adult in the house with her son and daughter. Her son testified that he overheard his mother threaten to whip his sister if she soiled her clothing again. Shortly thereafter, he heard his sister coughing and gagging. Appellant called 911, and the child was transported to the hospital where she was pronounced dead. Initially, Appellant admitted beating her daughter with a belt the preceding night, but she did not acknowledge any responsibility for the death. After an autopsy showed that the victim had died from a blow to her abdomen, however, Appellant stated that she may have stepped on the child accidentally. When construed most strongly in support of the trial court's findings, the evidence is sufficient to authorize a rational trier of fact to find proof of Appellant's guilt of felony murder, cruelty to children and aggravated assault beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Because the separate cruelty to children and aggravated assault counts were based upon acts committed by Appellant on the day preceding the death of the victim, neither of those convictions merges into the felony murder count and, accordingly, separate sentences for those crimes were authorized.

2. Appellant filed a motion to dismiss, asserting a violation of her constitutional right to a speedy trial. The trial court denied the motion, and she enumerates that ruling as error.

Appellant was arrested in May of 1998, shortly after the death of her daughter. She was not indicted until August of 2001, a delay of some 39 months. The trial did not begin until June of 2003. Thus, 61 months elapsed between the arrest and trial.

> In examining an alleged denial of the constitutional right to a speedy trial, courts must engage in a balancing test with the following factors being considered: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's

---

[*] The homicide occurred on May 16, 1998, and the other crimes were committed on the preceding day. The grand jury indicted Appellant in August of 2001, and reindicted her on April 22, 2003. On July 14, 2003, the trial court entered the judgments of conviction and sentences on its findings of her guilt. Appellant filed a timely motion for new trial, which the trial court denied on November 10, 2005. Appellant filed a notice of appeal on November 21, 2005, and the case was docketed in this Court on June 22, 2006. The appeal was submitted for decision on the briefs.

assertion of the right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972). The existence of no one factor is either necessary or sufficient to sustain a speedy trial claim, and a trial court's findings of fact and its weighing of disputed facts will be afforded deference on appeal. [Cits.]

*Williams v. State*, 277 Ga. 598, 599 (1) (592 SE2d 848) (2004).

*Length of the delay.* In calculating the length of the delay, the constitutional right to a speedy trial attaches on the date of arrest or when formal charges are initiated, whichever is earlier. *Wimberly v. State*, 279 Ga. 65 (608 SE2d 625) (2005). Here, that would be May of 1998, when Appellant was arrested. The delay of over five years before she was brought to trial "is so extraordinarily long as to be considered presumptively prejudicial and to require the consideration of the remaining factors in the balancing test. [Cit.]" *Williams v. State*, supra at 599 (1) (a).

*Reason for the delay.* The only reason the prosecution offered for the 39-month delay between Appellant's arrest and indictment was its inability to obtain the victim's medical records from the hospital. While the records may have been informative and helpful, the State did not show that, without them, obtaining an indictment was impossible or even difficult. In fact, it appears that when the indictment eventually was returned against Appellant, the child's medical records still had not been turned over to the prosecution by the hospital. Moreover, the inaccessibility of the records did not account fully for the 39-month pre-indictment delay. Thus, insofar as that portion of the 61-month period between Appellant's arrest and trial is concerned, "a review of the State's reasons for the delay reveals no valid explanation . . . . However, there is nothing evidencing 'that most serious abuse — "A deliberate attempt to delay the trial in order to hamper the defense. . . ." [Cit.]' [Cit.]" *Nelloms v. State*, 274 Ga. 179, 180 (549 SE2d 381) (2001). "[I]f the delay attributable to the [S]tate's preparation of its case is not deliberate but is negligent, it is weighted as a 'relatively benign' factor against the [S]tate. [Cits.]" *Jackson v. State*, 272 Ga. 782, 784 (534 SE2d 796) (2000).

On the other hand, the 22-month delay between indictment and trial was attributable, at least in part, to Appellant, who sought a continuance on one or more occasions.

These actions by the defense clearly contributed to the [6]1 month delay in bringing [her] to trial. "Thus, to the extent the reason for delay is attributable to the [S]tate, it is a relatively benign but definitely negative factor." [Cit.]

*Nelloms v. State*, supra.

*Assertion of the Right to Speedy Trial.* "[D]elay often . . . work[s] to a defendant's advantage. [Cit.]" *Perry v. Mitchell*, 253 Ga. 593, 595 (322 SE2d 273) (1984).

> This consideration plays into the third factor, i.e., the assertion of the right to a speedy trial. This factor " 'is entitled to strong evidentiary weight' against the defendant, (cit.)" [cit.], where, as here, [Appellant] filed no statutory demand for speedy trial pursuant to OCGA § 17-7-171 and did not raise [her] constitutional right to a speedy trial for the [6]1 months between [her] arrest and the filing of [her] motion to dismiss, in which [she] finally asserted the right. This delay in asserting [her] right to a speedy trial must be weighted against [Appellant]. [Cit.]

*Nelloms v. State*, supra at 181.

*Prejudice. Barker v. Wingo*, supra, identifies three interests that the speedy trial right is designed to protect, " 'the last being the most important: (a) to prevent oppressive pretrial incarceration; (b) to minimize anxiety and concern of the accused; and (c) to limit the possibility that the defense will be impaired.' [Cit.]" *Williams v. State*, 279 Ga. 106, 109 (1) (d) (610 SE2d 32) (2005). Appellant was free on bond for all but three months of the 61-month period, and she did not show that she was subjected to oppressive pre-trial incarceration. See *Smith v. State*, 275 Ga. 261, 263 (564 SE2d 441) (2002); *Jackson v. State*, supra at 785. "As for the second prejudice factor, anxiety and concern of the accused, 'it is always present to some extent, and thus absent some unusual showing is not likely to be determinative in defendant's favor.' [Cits.]" *Boseman v. State*, 263 Ga. 730, 733 (1) (d) (438 SE2d 626) (1994). Appellant did not make "any showing in the record that the delay caused [her] significant anxiety and concern beyond that generally experienced by defendants in [her] situation. [Cits.]" *Salahuddin v. State*, 277 Ga. 561, 563 (2) (592 SE2d 410) (2004). With regard to impairment of her defense, Appellant claims that, because of the delay, the tape of her 911 call, her daughter's medical records and two witnesses were unavailable. However, she did not show how the tape or the records were material to her defense of the murder and related charges. Applying the necessity exception to the hearsay rule, the trial court admitted into evidence the statement of one of the missing witnesses. See *Brannen v. State*, 274 Ga. 454, 458 (553 SE2d 813) (2001) (prejudice resulting from missing defense witness "alleviated"

by stipulation to admissibility of his statement). Moreover, his statement was of minimal importance, since he neither directly exculpated Appellant nor directly inculpated anyone else for the acts which resulted in the child's injuries and death. Compare *Hardeman v. State*, 280 Ga. App. 168, 171 (4) (633 SE2d 595) (2006) (testimony of deceased witness "material" and "went to the heart of the defense"). The other missing witness was Appellant's uncle, who had supervised her two children during the day on which the death occurred. However, she did not show that he was a material witness whose testimony was relevant to her defense and might have supported a different result in her bench trial.

