## A10A0019. FRANKLIN v. THE STATE.

(699 SE2d 575)

SMITH, Presiding Judge.

In this armed robbery and aggravated assault case, Raymond Franklin appeals from the trial court's order denying his motion to dismiss based upon a violation of his right to a speedy trial and the expiration of the statute of limitation. For the reasons set forth below, we affirm.

The record in this case shows that Franklin was indicted in Cobb County Superior Court on January 7, 1979, for two counts of armed robbery and one count of aggravated assault. Ten days later, Franklin escaped from custody during a supervised visit to a dentist's office. He killed a person during the course of his escape before being recaptured within 24 hours. On February 8, 1979, Franklin was separately indicted for abduction, kidnapping, and murder. On May 11, 1979, the trial judge granted the State's request that the armed robbery case against Franklin be placed on the dead docket because Franklin was "convicted on April 26, 1979, and sentenced to 20 years for kidnapping and a death sentence for murder." The record shows no objection by Franklin to the placement of the armed robbery case on the dead docket.

On April 29, 1984, the United States Supreme Court affirmed a decision by the Eleventh Circuit Court of Appeals setting aside Franklin's murder conviction and death sentence. See *Franklin v. Francis*, 720 F2d 1206 (11th Cir. 1983), affirmed, *Francis v. Franklin*, 471 U. S. 307 (105 SC 1965, 85 LE2d 344) (1985). On October 30, 1985, Franklin was again convicted of murder and kidnapping and sentenced to life in prison. At the time of Franklin's conviction, the sentencing option of life without parole had not yet been enacted by the General Assembly. See OCGA § 17-10-16 (a) (effective May 1, 1993).

Franklin testified that he became eligible for parole in March 2006 and was sent to a work release program in April 2006. He also testified that on October 16, 2006, he was informed that he "had made parole" and would be released the following week. On October 20, 2006, Franklin learned that his release had been cancelled based upon new information. The record includes an internal memo to a deputy court clerk dated December 14, 2006, requesting that the armed robbery and aggravated assault case be placed on a January 25, 2007 trial calendar.[1]

On January 25, 2007, in a one-sentence motion, the State petitioned the Cobb County Superior Court to remove the 1979

---

[1] We cannot determine from the record before us what entity generated this memo.

armed robbery and aggravated assault case from the dead docket. The trial court granted this motion in a written order entered on January 25, 2007, in which it noted that Franklin appeared for this hearing, was represented by appointed counsel, and did not oppose the removal of the case from the dead docket.

In a letter to Franklin's mother dated January 31, 2007, an assistant director with the state board of pardons and parole wrote:

> As you are aware, the Board's previous decision in this case was to tentatively grant parole upon [Franklin's] successful completion of the Georgia Department of Corrections work release program.
>
> The Board has now reconsidered the case and determined that it is not in the best interest of society to release him at this time.
>
> While the Board understands your desire to have your son released earlier, based on the very serious nature of his crime, they are not inclined to change their decision at this time.

Less than one month after Franklin's case was removed from the dead docket, Franklin hired private counsel. On March 23, 2007, within two months of the removal of this case from the dead docket, Franklin's new counsel moved to dismiss the charges based upon a violation of Franklin's right to a speedy trial and the expiration of the statute of limitation.

In August 2007 and December 2007, the trial court received testimony concerning the pending motion to dismiss and requested that the parties submit proposed orders after the hearing concluded. Franklin's counsel at the time of his 1985 murder retrial testified at the hearing on Franklin's motion to dismiss. She explained that she went back to court with Franklin the day after he was sentenced to life imprisonment "because he had not been advised of his appeal rights" at the conclusion of his trial the day before. According to counsel, the presiding judge informed Franklin about his appeal rights, and Franklin waived all of his appeal rights based upon an agreement with the State that the pending armed robbery and aggravated assault case would "be completed," meaning "dismissed." Counsel recalled that she made this deal with one of the assistant district attorneys who tried the case, either Nicollette Templer or Jim Morris.

Eddie Varnadore testified that he assisted Franklin's 1985 trial counsel with Franklin's defense in the murder trial. He recalled that she told him the day after the trial that they did not have to worry about an appeal of the case, but he could not remember why. He

could not remember if there was a deal with the State to dismiss other pending charges.

Franklin's 1985 trial counsel did not think the district attorney was present when the deal was made. She was "sure" a court reporter was present when Franklin waived his appeal rights, and her billing on the Franklin file included a half-hour for returning to court the day after the trial was completed. Finally, she recalled that Franklin gave a newspaper interview after the deal was completed, and she explained that she would never have let the press interview her client if any charges were still pending against him. She could not explain why she never followed up to ensure that the armed robbery case was removed from the dead docket and dismissed.

The former district attorney for Cobb County testified at the hearing that the armed robbery case was initially placed on the dead docket in 1979 at his direction and "customary with our practice at that time." He explained that the armed robbery charges remained on the dead docket at the time of Franklin's retrial for murder in 1985 "in the event that . . . those [murder] charges would fall or that ultimately the defendant may be in the position to be released." He testified that he retried the case with two assistant district attorneys, Templer and Morris, and that he "made it very clear to them" that deals with the defendant "had to be made by myself." He testified that he was not familiar with the deal testified to by Franklin's 1985 trial counsel, that he would never have agreed to it, and that he would not have authorized an assistant district attorney to agree to it. He testified that he made a deliberate decision not to remove the armed robbery case from the dead docket because of Franklin's life sentence in the murder case. He explained:

> I've never been a prosecutor that believes [i]n piling on a defendant once a defendant receives a significant sentence. There would have been no purpose. You could call it judicial economy. We, as you well know, had and still have a very active and very busy circuit.
>
> I saw no purpose at that time to bring other charges not related to the charges under which Mr. Franklin was presently serving a significant sentence merely to gain another conviction, unless I had to. And I told you earlier the reasons I would. And, that is, if there was an imminent possibility of this defendant being released or if the charges which he was serving time were either overturned or couldn't be tried again.

The judge who presided over the 1985 trial testified that he could not recall whether the defendant came back to court after receiving

his life sentence or whether there was a deal for him to give up his appeal rights in the murder case in exchange for an agreement by the State to give up its right to prosecute the armed robbery case. His normal practice would have been to do it in open court with a court reporter present.

The senior court reporter for Cobb County testified that she searched and found court reporter notes indicating that Franklin's murder trial ended on October 30, 1985. She searched and could not locate any court reporter notes for the murder case dated October 31, 1985, the date the 1985 trial counsel testified the deal was struck before the presiding judge. Assistant district attorney Templer testified that she did not have a specific recollection of the Franklin murder case, but that she would not have made any deal in a case of that magnitude without the district attorney's approval.

Ten months after the close of evidence, the trial judge wrote counsel and advised them that she had consulted with a disinterested expert, a law school professor, on the issue of "dead docketing a case beyond the applicable statute of limitation[ ] for the charged offenses." The trial judge also informed counsel that the expert had opined "that case law could support dismissing" such a case and invited the parties to submit supplemental letter briefs within 30 days. In her order denying Franklin's motion to dismiss, the trial judge acknowledged receiving letter briefs from both the State and Franklin on this issue, but her order does not analyze the statute of limitation issue raised by Franklin.[2]

The trial judge's order does, however, provide an in-depth analysis of the speedy trial issue. She noted that length of the delay "clearly triggers a speedy trial analysis using the three remaining *Barker v. Wingo* factors." With regard to the reason for the delay, she concluded: "the State's use of the dead docket functions was permissible and valid under Georgia law and not undertaken in bad faith in a deliberate attempt to hamper the defense. As such, the Court determines that the extent that the State is to blame for the delay in this case is relatively benign." Based upon factual disputes concerning the existence of a deal between the State and the defendant in 1985, she found that Franklin's assertion of his speedy trial rights were "a roughly equivalent balance as between the Defendant and the State." She factored the length of the delay into her analysis of prejudice, and concluded:

The failure by the defense to allege and prove any particu-

---

[2] The record before this court does not include these letter briefs, and communication with the superior court clerk's office has confirmed that these letters are not part of the official record maintained by the clerk's office.

larized trial prejudice which has resulted from the delay interval in this case weighs heavily against Raymond Franklin's claim that the State has violated his rights to a speedy trial, and outweighs any "presumptive prejudice" arising from the dead docket delay in this case.

After balancing the four speedy trial factors, the trial judge found no violation of Franklin's constitutional right to a speedy trial and denied Franklin's motion to dismiss.

1. Franklin asserts the trial court erred in denying his speedy trial claim. He argues that the trial court erred by finding that the reason for the delay was benign, instead of weighing it heavily against the State. He also maintains that the trial court erred in finding that his assertion of his right to a speedy trial was an equivalent balance between the State and himself. Finally, Franklin contends that he demonstrated prejudice because his parole was negatively impacted by the revival of this case and by his incarceration for an additional three years while waiting for a resolution of these charges.

In examining an alleged denial of the constitutional right to a speedy trial, courts must engage in a balancing test with the following factors being considered: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972). The existence of no one factor is either necessary or sufficient to sustain a speedy trial claim, and a trial court's findings of fact and its weighing of disputed facts will be afforded deference on appeal.

(Citation and punctuation omitted.) *Christian v. State*, 281 Ga. 474, 475-476 (2) (640 SE2d 21) (2007). We examine each of these *Barker* factors in turn.

(a) *Length of the delay*. We have held that a delay over five years "is so extraordinarily long as to be considered presumptively prejudicial and to require the consideration of the remaining factors in the balancing test." (Citation and punctuation omitted.) *Christian*, supra, 281 Ga. at 476 (2). We therefore consider the delay in this case presumptively prejudicial.

(b) *Reason for the delay*. The second factor in the *Barker* analysis asks the court to consider "both the reason for the delay and whether this is attributable to the defendant or the state." (Citation and punctuation omitted.) *Ditman v. State*, 301 Ga. App. 187, 190-191 (2) (b) (687 SE2d 155) (2009). "[T]he reason for the delay is

pivotal in evaluating the strength of a constitutional speedy trial claim, as it can color the consideration of all other factors. . . . [A]s the United States Supreme Court put it, 'the flag all litigants seek to capture is the second factor, the reason for the delay.' " (Citations, punctuation and footnotes omitted.) *Ruffin v. State*, 284 Ga. 52, 59 (2) (b) (ii) (663 SE2d 189) (2008).

> Deliberate delay to gain an improper advantage over the accused strikes at the very heart of the speedy trial guarantee and is thus "weighted heavily against the government" in the *Barker-Doggett* balancing process. Delays designed to hamper a defendant's ability to mount a successful defense, to harass the defendant, or to coerce him or her into testifying against a co-defendant or otherwise turning state's evidence all fall into this category. At the opposite extreme are situations where it is the defendant who requested or otherwise engineered the delay — say, for example, by going on the lam to avoid prosecution, filing a series of frivolous pretrial motions, or securing the unavailability of a critical prosecution witness. In such cases, it will be nearly impossible for the defendant to make out a violation of the Speedy Trial Clause.

(Citations and footnotes omitted.) Id.

There are multiple reasons for the delay in this case. A portion should certainly be attributed to Franklin's decision to escape and commit additional, more serious crimes. See *Coggins v. State*, 188 Ga. App. 455, 456-457 (2) (373 SE2d 269) (1988) (reason for delay attributed to defendant who "obviously through his own actions, was incarcerated in another county"). It can also be apportioned, in part, to the State's decision to dead docket the case four months after it was indicted as a result of Franklin's murder conviction and death penalty sentence. In *Hayes v. State*, 298 Ga. App. 338, 341-345 (2) (b) (680 SE2d 182) (2009), we held that a deliberate and intentional decision by the State to dead docket a case should be weighed heavily against the State, even if there was no deliberate attempt to hamper the defense.

The trial court's order does not address the reason for the delay between Franklin's filing of his motion to dismiss in March 2007 and the court's order denying the motion almost two years later in February 2009. "[T]he Supreme Court has made it clear that in the *Barker-Doggett* analysis, the 'government' includes all state actors, even trial and appellate court judges." (Citation, punctuation and footnote omitted.) *Ruffin*, supra, 284 Ga. at 61 (2) (b) (ii). Thus, this portion of the delay must be weighed against the State as well.

After considering all of the above, we conclude that the trial court should have weighed the reason for the delay factor against the State. *State v. Redding*, 274 Ga. 831, 832-833 (561 SE2d 79) (2002) (State's decision to dead docket case weighed against it); *Hayes*, supra, 298 Ga. App. at 345 (2) (b). The vast majority of the delay in this case resulted from the State's decision to dead docket the case and preserve its right to prosecute Franklin at a later time.

(c) *Assertion of the right to a speedy trial.* Franklin's failure to assert his speedy trial rights during the time the case was dead docketed (May 1979 until January 2007) cannot be held against him. See *Harris v. State*, 284 Ga. 455, 456, n. 9 (667 SE2d 361) (2008) (time on dead docket not counted against defendant in weighing the delay in asserting the right to a speedy trial); *Redding*, supra, 274 Ga. at 833 (failure to assert speedy trial not weighed against defendant when State represented that case would be dead docketed); *Hayes*, supra, 298 Ga. App. at 346 (2) (c) (time case dead docketed should not be considered when determining whether defendant timely asserted right to speedy trial). He did not, however, assert his right to a speedy trial during the four-month period after he was first indicted until the charges were dead docketed. Likewise, he did not promptly demand a speedy trial after the removal of the case from the dead docket. Finally, his escape demonstrates that he wanted to avoid a trial, instead of seeking a speedy one. This evidence weighs against Franklin.

Based on the conflicting evidence about the plea deal, Franklin's escape, his failure to demand a speedy trial before the dead docketing of this case, and his failure to file promptly a demand for a speedy trial after the case was removed from the dead docket, we conclude the trial court abused its discretion by evaluating this factor "a roughly equivalent balance as between the Defendant and the State." When the period of time the case was placed on the dead docket is removed from consideration, it becomes clear that Franklin's failure to demand a speedy trial for a total period of approximately seven months does not demonstrate a demand for a speedy trial in due course. See *Jones v. State*, 284 Ga. 320, 324 (2) (667 SE2d 49) (2008) (delay of nine months between indictment and filing of motion to dismiss weighed against defendant). This factor should therefore be weighed against Franklin. *Harris*, supra, 284 Ga. at 456.

(d) *Prejudice.* When evaluating the prejudice factor in the speedy trial analysis, courts should consider the "three interests which the speedy trial right is designed to protect: preventing oppressive pretrial incarceration, minimizing anxiety and concern of the defendant, and, most importantly, limiting the possibility that the defense will be impaired." (Citation omitted.) *Grizzard v. State*, 301 Ga. App. 613, 617 (2) (d) (688 SE2d 402) (2009). While there is a presumption

of actual prejudice in this case based upon the extreme length of the delay, the State can overcome this presumption if it "affirmatively prove[s] that the delay left the defendant's ability to defend himself unimpaired." (Citation and punctuation omitted.) Id. at 618 (2) (d). In this case, the State points to Franklin's testimony in the motion for new trial hearing that he confessed under oath to the armed robbery and aggravated assault charges during his murder trial. He also testified that he "admitted to everything from the beginning" at the time of his arrest. He acknowledged that he never planned to defend himself and that he has not lost any witnesses who would have helped him defend the case because there were no witnesses who could help him. Franklin's testimony affirmatively proves that the delay left Franklin's ability to defend himself unimpaired.

While "the possibility of harm to the accused's defense . . . is the 'most serious' of the three factors regarding prejudice to the defendant," (citation omitted) *Robinson v. State*, 287 Ga. 265, 269 (1) (d) (695 SE2d 201) (2010), consideration of the other two prejudice factors also demonstrates that Franklin suffered no actual prejudice. The Georgia Supreme Court has recognized "there is minimal possibility of oppressive pretrial incarceration" when a defendant is incarcerated for an unrelated offense. *Williams v. State*, 279 Ga. 106, 109 (1) (d) (610 SE2d 32) (2005). And Franklin has not shown that he suffered from any anxiety and concern about the dead docketed charges. *Treadwell v. State*, 233 Ga. 468, 470 (211 SE2d 760) (1975) (finding no anxiety when defendant told by his lawyer that the charges had been dropped).

Based on the record before it, the trial court did not err by concluding that the presumptive prejudice from the lengthy delay was outweighed by the State's proof that Franklin suffered no actual prejudice.[3]

(e) *Balancing the four factors*. As the Supreme Court explained in *Barker*,

> [w]e regard none of the four factors identified . . . as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

---

[3] We find no merit in Franklin's contention that possible impairment of his parole prospects for an unrelated crime should be considered when evaluating whether the delay in this case impaired his defense, caused oppressive pretrial detention, or caused anxiety and concern about the *pending* charges against him.

YALE LAW LIBRARY

*Barker*, supra, 407 U. S. at 533.

While two of the factors (length of the delay and reason for the delay) weigh heavily against the State based upon the district attorney's deliberate decision to dead docket the case indefinitely, Franklin did not assert his right to a speedy trial after the charges were first brought and before the case was dead docketed. Instead, he escaped in an attempt to avoid trial altogether. With regard to prejudice, the trial court properly concluded that Franklin has suffered no actual and particularized prejudice. We cannot find that the trial court abused its discretion by denying Franklin's speedy trial claim when he escaped to avoid trial, he did not demand a speedy trial after he was captured and before the case was dead docketed, he did not promptly demand a speedy trial after the case was removed from the dead docket, and he admitted under oath that he has no defense to the crime, that he does not have a defense and has never intended to mount a defense, and that no witnesses have been lost as a result of the delay. See *Harris*, supra, 284 Ga. at 457; *Treadwell*, supra, 233 Ga. at 470 (4); *Redd v. State*, 261 Ga. 300, 302 (404 SE2d 264) (1991); *Gray v. State*, 303 Ga. App. 97, 101 (d) (iii) (692 SE2d 716) (2010).[4]

We recognize that this is a case with an extraordinarily long delay, but we must be mindful that "no one factor is . . . sufficient to sustain a speedy trial claim," *Christian*, supra, 281 Ga. at 475-476 (2), and that we are required to "engage in a difficult and sensitive balancing process" of all four factors. *Harris*, supra, 284 Ga. at 456. The highly unusual facts with regard to prejudice (the defendant's admissions under oath about his utter lack of a defense) and the assertion of the right (the defendant's escape to avoid trial) tip the balance in this case against a finding that the defendant's right to a speedy trial was violated. To hold otherwise would elevate form over substance and give the length of the delay undue weight in the balancing test.

2. In his remaining enumeration of error, Franklin contends the trial court erred by denying his motion to dismiss the indictment based upon the statute of limitation, even though the court made no ruling on that basis.[5] Relying upon the following dicta in *Underhill v. State*, 129 Ga. App. 65 (198 SE2d 703) (1973), Franklin asserts that this case could not be removed from the dead docket after the

---

[4] The Supreme Court's recent decision in *State v. Lattimore*, 287 Ga. 505 (696 SE2d 613) (2010), is distinguishable because in *Lattimore*, the Supreme Court did not weigh the assertion of the speedy trial right against the defendant as we have in this case. Id. at 507. And the lack of prejudice was not established with certainty because the defendant in *Lattimore* did not admit under oath that he never intended to mount a defense to the charges.

[5] Franklin does not contend the trial court erred by *failing to rule* on the statute of limitation portion of his motion to dismiss. .

expiration of the statute of limitation: "We agree with the appellant that the court's discretion may not be used in an unlawful manner, for instance, to keep an indictment hanging over the head of the defendant merely to toll the running of the statute of limitation[ ]." Id. at 66 (1). The record before us, however, does not contain a ruling by the trial court on the statute of limitation issue, even though it was briefed and a subject upon which the court sought consultation with a disinterested expert. Without a ruling by the trial court, there is nothing for this court to review. *McBride v. State*, 213 Ga. App. 857, 860 (7) (446 SE2d 193) (1994). "[I]t is the duty of counsel to obtain a ruling on his motions or objections, and the failure to do so will ordinarily, as it does in this case, result in a waiver." (Citation and punctuation omitted.) *Mayberry v. State*, 301 Ga. App. 503, 505 (1), n. 3 (687 SE2d 893) (2009).

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED JULY 8, 2010 —
RECONSIDERATION DENIED JULY 27, 2010 — 

*Billy L. Spruell, Melinda D. Taylor*, for appellant.
*Patrick H. Head, District Attorney, Dana J. Norman, Marc D. Cella, Assistant District Attorneys*, for appellee.